Allen B. LIVINGSTON,
Plaintiff-Appellant,

v.

ROADWAY EXPRESS, INC., a
Delaware Corporation,
Defendant-Appellee.

No. 85–1326.

United States Court of Appeals,
Tenth Circuit.

Oct. 2, 1986.

Ronald E. Gregson, Denver, Colo., for plaintiff-appellant.

Gregory A. Eurich and Michael M. Shultz, of Holland & Hart, Denver, Colo., for defendant-appellee.

Before LOGAN, SEYMOUR, and ANDERSON, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Title VII of the Civil Rights Act of 1964 declares it unlawful for an employer

"*to* limit, segregate, or *classify* his employees or *applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities* or otherwise adversely affect his status as an employee, *because of such individual's* race, color, religion, *sex,* or national origin." 42 U.S.C. § 2000e–2(a)(2) (1982) (emphasis added). Livingston is a 6'7" white male who was rejected for employment as a truck driver with Roadway Express because of the company's 6'4" limitation for the position. Livingston alleges that the height limitation constitutes unlawful sex discrimination under Title VII because it has a disparate impact on males. He presented statistical evidence that nine-tenths of one percent of adult men are 6'4" or taller, while only three-tenths of one percent of women are 5'11" or taller. The company's height limitation therefore affects at least three times as many men as women. Without requiring the company to prove that the height limitation is a business necessity, *see Williams v. Colorado Springs, Colorado, School District Number 11,* 641 F.2d 835, 840–41 (10th Cir.1981), the district court dismissed the action, holding that "such a difference in opportunity is not sufficiently significant to constitute a discriminatory impact." Rec., vol. I, at 36. Livingston appeals and we affirm.

Title VII was enacted to ensure equality of employment opportunities and to eliminate those practices and devices that have historically discriminated on the basis of race, sex, color, religion, or national origin. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). In evaluating alleged violations of Title VII, the Supreme Court has established presumptions creating a prima facie case of unlawful discrimination as "a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). These presumptions are the "procedural embodiment of the recognition that our nation has not

yet freed itself from a legacy of hostile discrimination." *Parker v. Baltimore & Ohio Railroad,* 652 F.2d 1012, 1017 (D.C. Cir.1981). A plaintiff's membership in an historically disfavored group is thus the predicate upon which the presumptions rest, "for only in that context can it be stated as a general rule that the 'light of common experience' would lead a factfinder to infer discriminatory motive from the unexplained hiring of [a non-minority] rather than a [disfavored] group member." *Id.; see also Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir. 1985).

▪ Title VII, of course, prohibits discrimination against groups that historically have not been socially disfavored. *See McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 278–80, 96 S.Ct. 2574, 2577–79, 49 L.Ed.2d 493 (1976). However, the presumptions in Title VII analysis that are valid when the plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group. When a plaintiff who is a member of a favored group alleges disparate treatment, the courts have adjusted the prima facie case to reflect this specific context by requiring a showing of "background circumstances [which] support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Parker,* 652 F.2d at 1017; *see also Murray,* 770 F.2d at 67.

▪ In this case, Livingston argues on appeal that he established a prima facie case of disparate impact by his statistical showing. The Supreme Court first articulated the "disparate impact" theory of Title VII relief in *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971):

> *"The objective of Congress* in the enactment of Title VII is plain from the language of the statute. It *was to* achieve equality of employment opportunities and *remove barriers that have operated in the past to favor an identifiable group of white employees over other employees.* Under the Act, *practices,* procedures, or tests *neutral on their face,* and even neutral in terms of intent, *cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices."*

*Id.* at 429–30, 91 S.Ct. at 853 (emphasis added). Under traditional impact analysis, a plaintiff member of a disfavored group who shows that a neutral practice has a disproportionate impact on his or her class makes out a prima facie case because it is reasonable to presume that such a practice is a means by which historical discrimination is perpetuated. However, a neutral practice that has an adverse impact on a favored class simply cannot operate "to 'freeze' the status quo of prior discriminatory employment practices" within the meaning of *Griggs. Id.* at 430, 91 S.Ct. at 853. Accordingly, we hold that in impact cases, as in disparate treatment cases, a member of a favored group must show background circumstances supporting the inference that a facially neutral policy with a disparate impact is in fact a vehicle for unlawful discrimination.

▪ The record in this case reflects that during the relevant period, the company hired 189 males and 2 females as truck drivers. Relying on *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), Livingston argues that notwithstanding the total number of males hired, the limitation here is prima facie unlawful because it has a greater impact on males than on females. We disagree. The plaintiffs in *Teal* were blacks, a class historically subject to employment discrimination. The Supreme Court there concluded that when an employee promotion exam had a disparate impact on blacks, the company could not defend against this prima facie claim by showing that the "bottom-line" result of the promotion process was an appropriate racial balance. The Court pointed out that "[r]equirements and tests that have a discriminatory impact are merely some of the more subtle, but also the more pervasive, of the 'practices and de-

vices which have fostered racially stratified job environments to the disadvantage of minority citizens.'" *Id.* at 456, 102 S.Ct. at 2535 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973)). The concern underlying the holding in *Teal* was the elimination of a neutral policy having an adverse impact on minority individuals historically subject to discrimination in the workplace. Its rationale is not applicable when, as here, the plaintiff is a member of a favored group.

Livingston has offered no evidence of illegal sex discrimination other than statistics showing that the company's height restriction has a disproportionate impact on men. He has not shown that this disproportionality is reflected in the actual workforce, nor has he offered any other background facts supporting an inference that Roadway Express is one of those unusual employers that discriminate against the majority. Under these circumstances, the only reasonable inference to be drawn from our common experience is that a maximum height restriction does not limit a male job applicant because of his sex but because of his height, a form of discrimination not prohibited by Title VII.

The judgment of the district court is AFFIRMED.