**Robert JONES, Plaintiff,**

v.

**SLATER STEELS CORPORATION, Defendant.**

**Civ. No. F 86–184.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

May 29, 1987.

Ralph R. Blume, Blume, Wyneken, Connelly & Stucky, Fort Wayne, Ind., for plaintiff.

John R. Burns, III, Baker & Daniels & Shoaff, Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This is a reverse sex discrimination case brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* (1982). The plaintiff is a former male employee of the defendant, Slater Steels Corporation (Slater Steels). The plaintiff alleges that Slater Steels discriminated against him because of his sex and asserts claims based on the disparate treatment theory of discrimination. Slater Steels has filed a motion for summary judgment and argues that the plaintiff cannot establish a prima facie case of reverse discrimination. For the following reasons, Slater Steels' motion for summary judgment is granted.

### I

### *Summary Judgment Standards*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* — U.S. —, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the nonmoving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.,* 106 S.Ct. at 2512; *Valentine v. Joliet Tp. High School Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to

interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact. *Celotex,* 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 106 S.Ct. at 2511.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 106 S.Ct. at 2512.

When intentional discrimination is at issue, as it is in this case, this court approaches the application of these principles with special caution. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986). Summary judgment is infrequently an appropriate resolution. *McKenzie v. Sawyer,* 684 F.2d 62, 67 (D.C.Cir.1982). The factual issues in discrimination cases, including the issues of

discriminatory intent, which are often proven by circumstantial evidence, cannot often be resolved on summary judgment. *Powers,* 782 F.2d at 694. However, even when such issues as motive or intent are at stake, summary judgment is proper "where the plaintiff presents no indications of motive and intent supportive of his position." *Id.; Muson v. Friske,* 754 F.2d 683, 690 (7th Cir.1985). Accepting the plaintiff's evidence and drawing all legitimate inferences in his favor, the court now turns to the facts.

## II

### *Factual Background*

### A.

### *The Parties*

The plaintiff, Robert Jones (Jones), is a black male. Throughout his tenure with Slater Steels he was a "probationary employee." He was originally employed by the defendant on August 13, 1984. He began working in the Cold Finish Department. Jones was disqualified from the Cold Finish Department and was reassigned to the Maintenance Department, but never actually worked in the Maintenance Department due to an injury. Before Jones could return to work, he was laid off due to a general reduction of employees.

Based upon seniority Jones was recalled to work on January 14, 1985 and was assigned to the Twelve Inch Mill Department. (Pre-Trial Order, Stipulation of Fact). During his tenure at the Twelve Inch Mill Department Jones' supervisor observed that he was unproductive (Deposition of Mey, pp. 26, 29, 34), and that he did not always do what he was told to do. (Deposition of Mey, pp. 26, 29, 34). On September 2, 1984 and on January 23, 1985 Jones was verbally counseled regarding his job performance. (Pre-Trial Order, Stipulation of Fact). On the day before Jones was disqualified from the Twelve Inch Mill Department he was observed standing unproductively beside the scrap schear, the machine he was assigned to operate.[1]

---

1. The parties agree that Jones was observed standing unproductively beside the scrap schear. They do not agree, however, on how long Jones was standing beside the schear or for

Department Superintendent Didion disqualified and terminated Jones on February 6, 1985. Jones was represented at the termination meeting by Union Representative and Grievance Committeeman Paul Robison. Jones was informed that he was being terminated for poor work performance. (Deposition of Didion, pp. 20–21). The plaintiff's disqualification from the Twelve Inch Mill, which led to his termination, was his second disqualification.

The defendant is a producer of specialty steels. Currently, it employs 345 production employees at its Fort Wayne facility. Of those employees only 2 are female; the rest, like the plaintiff, are male. Since January, 1984, the defendant has hired 135 males and 5 females. (Affidavit of Bower). Of those employees, 7 males have been terminated (5.19%) and 2 females have been terminated (40%). (Affidavit of Bower).

### B.

### *The Defendant's Policies*

The defendant's new employees (such as Jones) are classified as "probationary employees" until they complete 520 hours of work. (Affidavit of Bower). Probationary employees may be discharged without rights of appeal, including arbitration. (Affidavit of Bower). Probationary employees are evaluated weekly by their supervisors and may be disqualified from a department at any time. (Affidavit of Bower). Since January, 1984 it has been the defendant's policy to terminate probationary employees who are disqualified twice during their probationary period.

The collectively bargained agreement between the defendant and the steelworker's union does not prohibit probationary employees from filing grievances. The agreement does, however, deny probationary employees the contractual protections relating to provisional discharge which non-probationary employees enjoy. By the terms of the collective bargaining agreement, grievance procedures may be initiated by the union or by employees. The defendant has no duty to advise employees to file grievances.

### C.

### *The Defendant's Female Employees* [2]

The plaintiff compares himself, primarily, to Norma Snyder, who was employed by the defendant on May 7, 1984 as a probationary employee. Snyder was originally assigned to the Twelve Inch Mill, but was disqualified for not being able to perform the work and was transferred to the Maintenance Department. (Affidavit of Snyder). After her disqualification, Snyder requested Union Grievance Committeeman Paul Robison to file a grievance on her behalf. (Affidavit of Snyder). The defendant did not encourage Snyder to file a grievance. (Affidavit of Snyder). Ultimately, Snyder's grievance was settled and it was agreed that "in case there was a layoff or cutback, her seniority would take her back to the Twelve Inch Mill." (Deposition of Didion, p. 28).

Snyder successfully completed her probationary period without a second disqualification. (Affidavit of Snyder). Snyder's work performance was outstanding.[3] It is the defendant's policy, because of the physical nature of the work done by its employees, to encourage its employees to assist

---

what reason. The defendant claims that Jones was standing beside the schear for 10–15 minutes. The plaintiff claims that he was standing beside the schear for only five minutes. He further claims that he was told by his foreman, Mr. Mey, to wait beside the schear until someone could come and tell him how to operate the machine. These factual disputes are not material. The parties agree that Jones was observed standing unproductively beside the schear and they further agree that this was the basis for his discharge. (Plaintiff's Brief, p. 11; Plaintiff's Affidavit). These are the material facts and they are not in dispute.

**2.** Since the plaintiff seeks to establish reverse discrimination by comparing himself to the defendant's female employees, facts relating to the defendant's treatment of female employees are crucial. Unfortunately, for purposes of this comparison, the huge majority of the defendant's employees are male.

**3.** Slater has "incentive rates" which reflect performance. Snyder has achieved incentive rates of 150% to 200%. (Affidavit of Snyder). Her performance has been, by these standards, outstanding.

each other with heavy labor. (Second Deposition of Middleton, pp. 5–6). Snyder both gave and received help. (Second Deposition of Middleton, pp. 4–6; Affidavit of Snyder).[4]

The defendant's other female employees include Gloria Mason, Nancy Oswald, Judy Coldiron, and Emma McGee. Mason was initially assigned to the Twelve Inch Mill; she was disqualified from the Twelve Inch Mill and transferred to the Billet Conditioning Department. She subsequently died from injuries suffered in an on the job accident. (Affidavit of Bower). Oswald was also assigned to the Twelve Inch Mill. Based upon seniority she bid out of that department and went to the Cold Finish Department. She completed her probationary period without disqualification. (Affidavit of Bower).

Like Mason and Oswald, Coldiron was initially assigned to the Twelve Inch Mill. She was disqualified and ultimately discharged for absenteeism and related problems on October 8, 1984. By that time her probationary period had ended. The company arbitrated her discharge and she was returned to work on May 13, 1985. She was terminated a second time on January 8, 1986, again for absenteeism. Like the other females, McGee was initially assigned to the Twelve Inch Mill Department. She was disqualified on May 14, 1984 and was transferred to the Maintenance Department, where she was disqualified a second time and discharged. McGee was discharged after having been twice disqualified and after 11 days of employment as a probationary employee.

## III

### *Legal Claims Under Title VII*

The plaintiff has five claims: (1) that he was not given enough time to understand his job before he was discharged; (2) that he was not assisted like Norma Snyder; (3) that he was not permitted to transfer to a different department; (4) that he was discharged without being allowed to explain his position; and (5) that he was not told by the defendant that he could file a grievance.[5] Each of the plaintiff's claims shares the basic analytical framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The *McDonnell Douglas—Burdine* paradigm involves a three-step procedure. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093, *citing McDonnell Douglas Corp.*, 411 U.S. at 792, 93 S.Ct. at 1817. *Accord United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

This court cannot require Jones to submit direct evidence of Slater's discriminatory intent. *Aikens*, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3. "[C]ourts often must rely on circumstantial evidence of employer motivation in employment discrimination

4. Middleton's first deposition is cited extensively by the plaintiff in an attempt to show that Snyder received preferential treatment because of her sex, in the form of assistance with heavy tasks. In his second deposition, however, Middleton explained that Snyder both gave and received help, and was not given preferential treatment. He also explained that some men receive more help than others, depending on the job being performed. (Second Deposition of Middleton, pp. 4–6). There are no disputes of material fact surrounding the help given to Snyder. As part of the defendant's policy of encouraging help she, like others including the men, both gave and received assistance.

5. The plaintiff never clearly outlines his various claims. The five claims outlined by the court are gleaned from the plaintiff's brief, the pre-trial order, and the complaint.

cases." *Hearn v. R.R. Donnelly & Sons Co.*, 739 F.2d 304, 306 (7th Cir.1984), *cert. denied*, 469 U.S. 1223, 105 S.Ct. 1214, 84 L.Ed.2d 356 (1985). Throughout the three-step procedure the plaintiff retains the burden of persuasion. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. "The factual inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff. The district court must decide which party's explanation of the employer's motivation it believes." *Aikens*, 460 U.S. at 714, 103 S.Ct. at 1481.

While this three-step paradigm set forth above is appropriate in reverse discrimination cases, *see, e.g., Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 66–67 (6th Cir.1985) and *Rivette v. United States Postal Service*, 625 F.Supp. 768, 770–71 (E.D.Mich.1986), the proof required in the prima facie stage of the paradigm must be modified to reflect the fact that the majority, rather than the minority, is the object of discrimination. Modification of the paradigm is entirely consistent with the Supreme Court's holding in *McDonnell Douglas*, which recognized that discrimination may take place in a variety of contexts.[6] *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Modification is essential if the history and purpose of Title VII is to be honored.

The primary purpose of Title VII is to assure equality of employment opportunities and to eliminate discriminatory practices which work to the disadvantage of *minority* citizens. *Rivette*, 625 F.Supp. at 770, *citing McDonnell Douglas*, 411 U.S.

at 800, 93 S.Ct. at 1823.[7] While it is true that Title VII prohibits discrimination against both sexes it makes little sense, within the historical context of the Act, to infer discrimination against men in the same way that discrimination is inferred against women. *See Ustrak v. Fairman*, 781 F.2d 573, 577 (7th Cir.1986). While establishing a prima facie case merely entitles the plaintiff to an inference of discrimination and is not a factual finding to that effect, *Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 512 (7th Cir.1986), it does require the employer to offer some legitimate nondiscriminatory explanation for its actions, which then moves the court to issues of pretext and questions of motive and intent.

With the purpose and historical context of Title VII in mind, as well as the significance of a prima facie case, courts have required reverse discrimination plaintiffs to show that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority," as a part of proving a prima facie case. *Murray*, 770 F.2d at 67.[8] Similar heightened standards have been articulated by a variety of courts. *Livingston v. Roadway Exp., Inc.*, 802 F.2d 1250, 1252 (10th Cir.1986); *Jasany v. United States Postal Service*, 755 F.2d 1244, 1252 (6th Cir.1985); *Parker v. Baltimore & O.R. Co.*, 652 F.2d 1012, 1017 (D.C.Cir.1981) (membership in a historically disfavored group is the predicate upon which the presumption of discrimination

6. The paradigm must be modified in two ways. Most obviously, the elements of a prima facie case must be adjusted to fit the nature of a plaintiff's various claims, i.e., a claim regarding discharge must be treated differently than a claim regarding lack of assistance. Secondly, the prima facie case must be modified to fit the context of reverse discrimination. This is the type of modification to which the court is presently referring and it ought not be confused with the first type of modification.

7. While both *Rivette* and *McDonnell Douglas* refer to racial discrimination the same reasoning applies to sex discrimination. There is no doubt that females have historically been the disadvantaged minority.

8. The Seventh Circuit has not specifically set forth the standards of a prima facie case of reverse discrimination. *See Kirk v. Breman Comm. High Sch. Dist. Bd. of Educ.*, 811 F.2d 347, 354 n. 10 (7th Cir.1987) (quoting *Murray*, and suggesting that it would follow *Murray* if given the opportunity). The Seventh Circuit has, however, noted that it is improper to presume discrimination "based on the mere fact that a white is passed over in favor of a black." *Ustrak v. Fairman*, 781 F.2d 573 (7th Cir.1986), citing *Murray*. It has also noted a distinction between the use of the *McDonnell Douglas* paradigm to show discrimination against the minority as opposed to the majority. *Christensen v. Equitable Life Assur. Soc. of U.S.*, 767 F.2d 340, 343 (7th Cir.1985).

rests, "for only in that context can it be stated as a general rule that the 'light of common experience' would lead a factfinder to infer discriminatory motive from the unexplained hiring of [a majority] rather than a [minority] group member."). Like these courts, this court is unwilling to infer discrimination in a reverse discrimination case unless the plaintiff's prima facie case includes a showing that there are circumstances supporting the suspicion that the defendant is that unusual employer who discriminates against the majority; in this case, against men.

■ The plaintiff has not offered any circumstantial evidence to create a suspicion that Slater Steels discriminates against men. To the contrary, it appears that Slater's employment practices have worked to the benefit of men. As noted in the facts, Slater currently employs 345[9] production workers; only two are female. Of the 140 employees hired since January, 1984, 5.19% of the males have been terminated and 40% of the females have been terminated. These facts belie the notion that Slater is the unusual employer which discriminates against men.

In *Murray*, the court upheld a grant of summary judgment in a reverse race discrimination case because the "majority" of mutuel clerks (employees similarly situated to the plaintiff) were white, so that there was no suspicion of discrimination against the majority. *See Murray*, 770 F.2d at 68. Like this case, *Murray* was a disparate treatment case. In *Livingston*, a reverse sex discrimination disparate impact case, the same reasoning was used.[10] *See Livingston*, 802 F.2d at 1252. Noting that the

defendant had hired 189 males and 2 females, the court held that no prima facie case had been established because there was no suspicion that the defendant was discriminating against the majority.

Like the plaintiffs in *Murray* and *Livingston*, Jones has failed to offer evidence, in the form of background circumstances, to create a suspicion that Slater Steels discriminates against men.[11] Indeed, the facts tend to remove any suspicion and show that Slater has hired and retained a great deal more men than women. Since the plaintiff has failed to make this showing, which is necessary to establish a prima facie case, the defendant is entitled to summary judgment.

## IV

### Rule 11 Sanctions

The defendant argues that this case is frivolous and requests sanctions under Rule 11 of the Federal Rules of Civil Procedure. *Rule 11 is not a loser pay rule.* Obviously, losing a motion for summary judgment, without more, does not require the imposition of sanctions. The rule provides:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to

---

9. This figure was obtained from Bower's affidavit, filed March 9, 1987.

10. That *Livingston* was a disparate impact case is significant, since the prima facie stage of a disparate impact case requires the plaintiff to show that a facially neutral employment practice adversely impacted a protected group, such as women. *Beard v. Whitley County REMC*, 656 F.Supp. 1461, 1468 (N.D.Ind.1987). In *Livingston*, the plaintiff complained that the defendant's height requirement had an adverse impact on men. *Livingston*, 802 F.2d at 1251. The defendant's hiring record (189 men, 2 women) belied not only the necessary contention that it discriminated against the majority, but also the

necessary contention that men were adversely impacted. In this case adverse impact is not at issue as it was in *Livingston*. Nevertheless, in both *Livingston* and the case at bar, the plaintiffs failed to show any history of discrimination against the majority.

11. The court notes the defendant's arguments (and agrees) that even under the traditional *McDonnell Douglas* paradigm (where the minority is the object of discrimination) the plaintiff cannot establish a prima facie case. These arguments need not be reached since the court has already determined that a modified burden is appropriate in reverse discrimination, and since that burden has not been sustained.

cause unnecessary delay or needless increase in the cost of litigation.

If a pleading violates this rule, the court "shall impose" an "appropriate sanction," which may include the amount of reasonable expenses and attorney's fees incurred by the other party because of the filing of the pleading or motion.

■ The Notes of the Advisory Committee on the Federal Rules make it clear that Rule 11's provisions are designed to "discourage dilatory or abusive tactics and [to] help streamline the litigation process by lessening frivolous claims or defenses." *See also Dominguez v. Figel*, 626 F.Supp. 368, 373 (N.D.Ind.1986). The core of Rule 11 is that the signature on the pleading certifies that "after reasonable inquiry [the pleading, motion, or other paper] is *well grounded in fact* and is warranted by existing law...." (Emphasis added). Thus, Rule 11 sanctions cannot be avoided by a merely subjective belief that the law or facts are a certain way; the "reasonable inquiry" language makes the test an objective one. *Indianapolis Colts v. Mayor and City of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985).

■ In this case, the defendant is entitled to summary judgment because the undisputed material facts do not create any suspicion that Slater Steels has a history of discrimination against men. The plaintiff failed to establish a prima facie case. It does not follow, however, that sanctions are appropriate. This is particularly true here, where the legal issue is one of first impression in this circuit, and where the parties did not agree on the elements of the plaintiff's prima facie case.[12] The defendant also argues that the plaintiff's filings are not well grounded in fact. While the

facts overwhelmingly support the grant of summary judgment, they do not warrant sanctions.[13]

## V

### *Conclusion*

A plaintiff's prima facie case, in a reverse discrimination suit, must include a showing that background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority. To require less would be to ignore the history and purpose of Title VII. The undisputed facts in this case do not create any suspicion that Slater Steels discriminates against men. Since the plaintiff failed to establish a prima facie case, the defendant is entitled to summary judgment.

---

**12.** The defendant argued for the same modified version of the prima facie case which has been adopted by other circuits and which was adopted herein by this court. The plaintiff never actually acknowledged the holdings of other circuits, but rather, set forth the standard prima facie case which applies when a minority is claiming discrimination. This argument is an argument (somewhat by inference) for the extension of existing law and is not within the parameters of Rule 11.

**13.** The plaintiff and his lawyer, however, came dangerously close to violating Rule 11. The rule requires a "reasonable inquiry" into the facts before a pleading, motion, or other paper is filed. The defendant vigorously points out the paucity of evidence supporting the plaintiff's claims, even under a traditional prima facie analysis. It appears from the record, moreover, that little, if any, formal discovery was conducted by the plaintiff, arguably in violation of the duty to inquire. While this has resulted in some burden to the defendant, sanctions are not appropriate.