Kenneth J. NOTARI, Plaintiff–Appellant,

v.

DENVER WATER DEPARTMENT,
Defendant–Appellee.

No. 91–1190.

United States Court of Appeals,
Tenth Circuit.

July 29, 1992.

John Mosby, Denver, Colo., for plaintiff-appellant.

Carol M. Welch, Hall & Evans, Colorado Springs, Colo., for defendant-appellee.

Before TACHA and KELLY, Circuit Judges, and CONWAY,* District Judge.

TACHA, Circuit Judge.

Appellant Kenneth Notari appeals an order of the district court granting summary judgment in favor of appellee Denver Water Department (Denver Water). The district court dismissed Notari's claim pursuant to 42 U.S.C. § 1983 because it arose from the same factual allegations as his claim under Title VII, 42 U.S.C. § 2000e *et seq.* The district court found that Notari failed to establish a prima facie case of reverse discrimination and dismissed his Title VII claim. We exercise jurisdiction under 28 U.S.C. § 1291 and reverse the district court.

## BACKGROUND

Notari, a white male, began his employment with Denver Water in June 1974. During that time, Notari was employed as a seasonal laborer, a customer serviceman I, a water serviceman I, a water serviceman II, and an assistant valve operator. On five different occasions—September 1980, February 1981, November 1982, March 1988, and June 1988—Notari applied for the position of safety and security coordinator. In June 1988, Denver Water selected a woman over appellant for the position of safety and security coordinator.

The process of applying for a position at Denver Water includes an oral board examination. The board ranks the candidates and refers the top three for interviews with the department head where the vacancy is located. In this case, after the oral examination, the candidates were interviewed by Gilbert Archuleta, head of the Safety and Security Department, and his superior, James Crockett. After the interviews, Archuleta and Crockett determined that Notari was the applicant best qualified for the position. They then placed Notari's name on a selection sheet and submitted it to the

---

* The Honorable John E. Conway, United States District Judge for the District of New Mexico, sitting by designation.

Director of Personnel, a woman named Rogene Hill. Hill rejected Archuleta's and Crockett's selection of Notari and told them that the focus of the position should shift from "safety" to "security." After this description change, Archuleta and Crockett continued to believe that Notari was the best qualified for the position. However, a reevaluation occurred and a woman was selected for the position over Notari.

After Denver Water denied Notari the position of safety and security coordinator, he filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination due to his sex. When the EEOC terminated proceedings, Notari brought suit in the United States District Court for the District of Colorado alleging that he was more qualified than the woman selected and that her selection violated his rights protected by Title VII and § 1983. On December 4, 1990, Denver Water filed a motion for summary judgment, which the district court granted on May 2, 1991.

## DISCUSSION

■ We review summary judgment orders de novo, using the same standards the district court applies. *Osgood v. State Farm Mut. Auto. Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). Summary judgment is appropriate "if all the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

### A. Section 1983

The district court granted summary judgment in favor of appellee on Notari's § 1983 claim for two reasons. First, the court held that the § 1983 claim "arises from the same factual allegations as his Title VII claim." Second, the court concluded that Notari "fails to identify an independent constitutional or federal statutory right that allegedly has been violated." We disagree.

Several of this court's recent decisions deal with the relationship between Title VII and § 1983. In *Brown v. Hartshorne Public School District No. 1*, 864 F.2d 680, 683 (10th Cir.1988), we announced the general rule that a state employee suffering from discrimination may assert claims under both § 1983 and Title VII. More recently, in *Drake v. City of Fort Collins*, 927 F.2d 1156 (10th Cir.1991), we held that a plaintiff must "have an independent basis for claims outside of Title VII, 'lest Congress' prescribed remedies under Title VII be undermined.'" *Id.* at 1162 (quoting *Starrett v. Wadley*, 876 F.2d 808, 813 (10th Cir. 1989)). A closer look at our decision in *Drake* reveals how we intended our "independence" requirement to be understood.

■ In that case, which involved a Title VII disparate treatment plaintiff who also sought relief under §§ 1981 and 1983, we held that a Title VII plaintiff who "alleges that his ... equal protection rights were violated, and requests remedies for those alleged violations under ... [§] 1983" has stated an independent basis for that claim. *Id.* at 1162. Thus, under *Drake*, the basis for a § 1983 claim is "independent" from Title VII when it rests on substantive rights provisions *outside* Title VII—that is, when it rests on a constitutional right or a federal statutory right other than those created by Title VII. We emphasize that the basis of a § 1983 claim may be independent of Title VII even if the claims arise from the same factual allegations and even if the conduct alleged in the § 1983 claim also violates Title VII. For example, a § 1983 claim of racial discrimination is independent of a statutory disparate treatment claim arising out of the same set of facts because the § 1983 claim is substantively grounded in the Equal Protection Clause of the Fourteenth Amendment, whereas the disparate treatment claim flows from Title VII. Because the substantive legal standards that govern these claims emanate from different sources, as long as the substantive legal bases for the claims are distinct, our "independence" requirement is satisfied and Title VII does not foreclose an employment discrimination plaintiff's § 1983 claim.

Applying this analysis to the present case, we hold that Notari's § 1983 claim survives at this stage. In his Title VII claim Notari contends that Denver Water violated his right to equal employment opportunity, a right that the Civil Rights Act of 1964 protects. In his § 1983 claim, he asserts that Denver Water acted under color of law to violate rights secured by the Fourteenth Amendment's Equal Protection and Due Process Clauses. The substantive legal bases for these claims are distinct. Only those § 1983 claims that rely upon Title VII's provisions as the substantive basis for their validity are foreclosed under this analysis; such is not the case here. Accordingly, we reverse the district court's dismissal of Notari's § 1983 claim.

## B. Title VII

Notari asserts that the district court erred in granting summary judgment in favor of Denver Water on his Title VII claim. The district court found that because Notari did not allege background facts that would support an inference that Denver Water is one of those unusual employers that discriminates against the majority, he failed to state a prima facie case of reverse discrimination. *See Livingston v. Roadway Express Inc.*, 802 F.2d 1250 (10th Cir.1986).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established a three-part paradigm for evaluating Title VII disparate treatment claims. First, the plaintiff must establish a prima facie case of discrimination. Second, if the plaintiff carries his initial burden, the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for the challenged workplace decision. Third, if the defendant carries this burden, the plaintiff has an opportunity to prove that the legitimate reasons the defendant offered were merely a pretext for discrimination. *Id.* at 802, 93 S.Ct. at 1824. Because the district court in this case found that Notari failed to state a prima facie case, we turn our attention to the law that has developed around that aspect of the Title VII disparate treatment claim.

A plaintiff must establish a prima facie case of racial discrimination and under *McDonnell Douglas*, may do so by demonstrating the following: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802, 93 S.Ct. at 1824. The Court noted, however, that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie case proof required from respondent is not necessarily applicable in every respect in differing factual situations." *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13. Thus, for example, the Court modified the first element of the prima facie case in gender discrimination cases so that a female plaintiff must only show that she is a woman. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 1093 n. 6, 67 L.Ed.2d 207 (1981). Similarly, this court has recognized that in a promotion case, such as this one, a plaintiff fulfills the fourth element when he shows that the position was filled by another. *Mortensen v. Callaway*, 672 F.2d 822 (10th Cir.1982).

Although it is clear that Title VII's protection is not limited to those individuals who are members of historically or socially disfavored groups, *Livingston*, 802 F.2d at 1252 (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976)), the Supreme Court has not addressed whether the showing required to state a prima facie case must be altered in a "reverse discrimination" case.

A number of courts have concluded that the *McDonnell Douglas* prima facie case formulation must be modified when the plaintiff pursues a "reverse discrimination" claim. In *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012 (D.C.Cir.1981), the D.C. Circuit held that a reverse discrimination plaintiff may "rely on the *McDonnell Douglas* criteria to prove a prima facie case of intentional disparate treatment

when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* at 1017. *See also Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 67 (6th Cir.1985); *Jones v. Ohio Dep't of Mental Health,* 687 F.Supp. 1169 (S.D.Ohio 1987); *Bennett v. Texas Bd. of Pardons & Paroles,* 670 F.Supp. 196 (E.D.Tex.1987); *Jones v. Slater Steels Corp.,* 660 F.Supp. 1570 (N.D.Ind.1987); *cf. Livingston v. Roadway Express, Inc.,* 802 F.2d 1250 (10th Cir.1986) (applying the "background circumstances" analysis in a disparate impact case while noting in dicta that such analysis also applies to disparate treatment cases). *But see Collins v. Sch. Dist. of Kansas City, Mo.,* 727 F.Supp. 1318, 1320 (W.D.Mo.1990) (rejecting the "background circumstances" requirement).

We find the reasoning that supports the decisions to modify the *McDonnell Douglas* formulation for reverse discrimination cases persuasive. As the Supreme Court has indicated, "[a] prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). We explained in *Livingston* that it is appropriate to "adjust[ ] the prima facie case to reflect" the reverse discrimination context of a lawsuit because "the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group." *Livingston,* 802 F.2d at 1252. The *McDonnell Douglas* presumption— that is, the presumption that unless otherwise explained, discrimination is more likely than not the reason for the challenged decision—is valid for a reverse discrimination claimant only when the requisite background circumstances exist. Thus, we agree that a Title VII disparate treatment plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.

▮ In this case, the district court correctly found that Notari failed to even allege that the requisite background circumstances were present. Thus, Notari may not rely upon the *McDonnell Douglas* formulation to state his prima facie case. That conclusion does not, however, end our review of this case. We also must decide whether a reverse discrimination plaintiff's failure to allege background circumstances necessarily compels a conclusion that he has failed to state a prima facie case of intentional discrimination. We must decide, in other words, whether a disparate treatment plaintiff's failure to demonstrate entitlement to the *McDonnell Douglas* presumption forecloses his opportunity to prove that he was a victim of intentional discrimination. We hold that it does not.

This court has held, in discussing claims brought by members of historically disadvantaged groups, that a disparate treatment claimant must rely either upon the *McDonnell Douglas* presumption or present direct proof of discriminatory intent. *Ortega v. Safeway Stores, Inc.,* 943 F.2d 1230, 1236 (10th Cir.1991). One need only to hypothesize the existence of two similarly victimized employees, one black and one white, and examine the fates of their respective disparate treatment claims to recognize that some additional alternative must be available for plaintiffs pursuing reverse discrimination claims.

Assume that a black employee is the victim of intentional discrimination. He lacks direct evidence to demonstrate that his employer discriminated intentionally, but possesses persuasive indirect evidence to support his claim. Under the general rules, his lack of direct evidence is not fatal because he may proceed to state his prima facie case without difficulty using the four-prong *McDonnell Douglas* formulation. The *McDonnell Douglas* presumption operates to provide this plaintiff with an opportunity to rely upon his strong indirect evidence to convince a fact finder that his employer discriminated against him. Ab-

**590**

sent unusual circumstances, his white counterpart will not be so fortunate.

Assume that a white worker also is a victim of intentional racial discrimination. He also lacks direct evidence of his employer's racially discriminatory motivation, but possesses persuasive indirect evidence that supports his claim. Under the modified *McDonnell Douglas* standard for reverse discrimination plaintiffs that we described above, he states a prima facie case only if he can show background circumstances that demonstrate that his employer is one of those unusual employer who discriminate against the majority. If he cannot make that showing his claim will be dismissed—given his lack of direct evidence of intentional discrimination—for failure to state a prima facie case. Unlike the black worker, he will have no opportunity to use his strong indirect evidence to convince the fact finder about the validity of his claim.

This result is untenable and inconsistent with the goals of Title VII. The claims of two similarly situated victims of intentional discrimination should not be subjected to such dissimilar dispositions. Just because a reverse discrimination claimant cannot show the background circumstances necessary to trigger the *McDonnell Douglas* presumption does not inexorably mean that his employer has not intentionally discriminated against *him*. A given employer may discriminate against an individual white worker even when no evidence demonstrates that the employer generally favors workers who belong to historically disadvantaged groups. An employee who is the victim of intentional discrimination in such circumstances, and who adduces sufficient evidence of that discrimination, should be permitted to proceed beyond the prima facie case stage of litigation. The *McDonnell Douglas* prima facie case formulation never operates to bar the claim of one who is a member of a historically disadvantaged group and who is truly a victim of the intentional workplace discrimination that Title VII prohibits. Such an employee will *always* be able to carry their initial *McDonnell Douglas* burden. The formulation should not be allowed to operate as a bar to similarly victimized reverse discrimination claimants.

The Fourth Circuit has held that a plaintiff may establish a prima facie case of disparate treatment under Title VII "by direct evidence of discrimination or by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for plaintiff's race he would have been promoted." *Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986) (en banc). Under *Holmes,* a plaintiff "must resort to the *McDonnell Douglas* presumption with all its ensuing complexities" only when he lacks such evidence. *Id.* We adopt the set of prima facie case alternatives that the Fourth Circuit has outlined. Thus, a plaintiff who presents direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff states a prima facie case of intentional discrimination under Title VII.

We emphasize that a plaintiff who attempts to state a prima facie case in this fashion is not entitled to rely on the presumption that is implicit in the *McDonnell Douglas* prima facie case analysis. In other words, it is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision. Instead, the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.

In this case, the district court's conclusion that Notari failed to state a prima facie case was based solely on its determination that he failed to allege the background circumstances necessary to trigger operation of the *McDonnell Douglas* presumption in a reverse discrimination claim.

On remand, the district court must additionally determine whether Notari has adduced any evidence to support as a reasonable probability the inference that but for

his gender, he would have been promoted. The approach we announce today does not displace the *McDonnell Douglas* paradigm but simply provides an alternative basis upon which plaintiffs may satisfy their prima facie burden. Thus, if the evidence is sufficient in that regard, the district court should permit Denver Water to articulate a nondiscriminatory justification for its promotion decision, and then Notari should have the chance to show that the articulated justification is pretextual. At all times, Notari will bear the burden of ultimate persuasion on the issue of intentional discrimination.

REVERSED AND REMANDED.