**R. James BREIDING, Plaintiff,**

v.

**H. Lawrence GARRETT, III, Defendant.**

**No. 90–692–CIV–ORL–18.**

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 21, 1993.

R. James Breiding, pro se.

Ralph Hopkins, U.S. Atty's Office, Middle District of Florida, Orlando, FL, for defendant.

G. KENDALL SHARP, District Judge.

Approved and So Ordered.

## REPORT AND RECOMMENDATION

BAKER, United States Magistrate Judge.

TO THE UNITED STATES DISTRICT COURT:

### I. INTRODUCTION

Plaintiff R. James Breiding (Breiding), proceeding *pro se,* brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* against H. Lawrence Garrett, III, Secretary of the Department of the Navy (Secretary). The complaint alleged claims of sex and age discrimination arising out of the Secretary's failure to promote Breiding.

Pursuant to 42 U.S.C. § 2000e–5(f)(5), the presiding District Judge ordered the United States Magistrate Judge to conduct all further appropriate proceedings in the matter, including trial (Doc. No. 3). A two day trial was held December 1–2, 1992. Having heard the evidence and considered the written and oral arguments presented, the undersigned issues this Report and Recommendation of proposed findings of fact and appropriate disposition of the case.

### II. AGREED FACTS

The parties are in agreement as to a number of jurisdictional and background facts. This Court has jurisdiction under 28 U.S.C. § 1331.

Breiding, a male, was born October 20, 1932. He began his tenure at The Naval Training Center (NTC) in Orlando, Florida in April 1981. On August 25, 1986, Vacancy Announcement 2970–86 was opened for the position of Electronics Engineer/Mathematician/Computer Scientist, grade level 13. Breiding applied for the position.

William Parrish, Jr. was the selecting official for this position. As the selecting official, Parrish was responsible for preparing the job vacancy announcement, defining the critical rating elements for the position, preparing the crediting plan, and selecting the rating panel.

The rating panel reviewed and evaluated the documents submitted by the applicants in light of the crediting plan [1] and the vacancy announcement. Each of the three panel members conducted an independent evaluation of the applications and created a document reflecting the rating given to each candidate. From these ratings, a Certificate of Eligibles was created. The Certificate listed seven names. Five were listed as highly qualified and two were listed non-competitively. Breiding was listed as highly qualified.

Parrish received the Certificate of Eligibles and the application documents. Based on those documents, Parrish concluded that none of the seven candidates was clearly superior to the others, so he decided to interview each of them. After conducting the interviews, Parrish selected Pamela Woodard, a thirty-seven year old female, to fill the position. This decision was then reviewed by Paul Little, Manager of the Advanced Simulation Concept Division, who had created the vacancy. After his review of the application documents and the selection, he concluded that Woodard was a reasonable selection and that the procedures followed in the selection process were proper. The selection then went to NTC's EEO office for further review.

Breiding complained to the EEO office at NTC about the selection. Following his final interview with an EEO counselor, Breiding filed a complaint of age and sex discrimination. Breiding has complied timely with the required procedures for judicial review.

## III. GOVERNING LAW

The law applicable to this disparate treatment case is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and their progeny. The analytical framework established in these cases also applies to ADEA cases. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir.1987).

The plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093. The plaintiff can meet this burden if he can show (1) he belongs to a protected group; (2) he applied for and was qualified for the promotion; (3) despite his qualifications, he was denied the promotion; and (4) a person outside the protected group was promoted. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 n. 7 (11th Cir.1983). If the plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for rejecting the plaintiff. *Id.* This is a burden of production. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094. The defendant does not need to persuade the court that it was actually motivated by the proffered reasons. *Id.* at 254, 101 S.Ct. at 1094. Should

---

1. The crediting plan contained five rating elements. The panel members gave a numerical score for each element based upon an applicant's level of performance on each element. The rating elements were: (A) knowledge of digital computer systems principles, architecture, operating systems, compilers, utility software, peripherals, etc.; (B) knowledge of computer hardware and software systems and real-time applications as functional components of complex major weap-ons systems simulators; (C) knowledge of real-time programming applications techniques, including math modeling and numeric models, in both high order (Fortran) and assembly level languages; (D) knowledge of Project/Systems management processes associated with the planning, acquisition and development of complex weapons systems simulators; and (E) ability to communicate effectively, both orally and in writing.

the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were merely a pretext for discrimination. *Id.* at 253, 101 S.Ct. at 1093.

The leading Eleventh Circuit cases applying these principles in situations analogous to the case at bar are *Perryman,* 698 F.2d 1138; *Equal Employment Opportunity Commission v. Alton Packaging Corp.,* 901 F.2d 920 (11th Cir.1990); and *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515 (11th Cir.1991).

## IV. CONTENTIONS OF THE PARTIES AND EVIDENCE PRESENTED

Breiding contends that his education, experience, and qualifications made him a better candidate for the position than Woodard. He also argues that the Secretary's stated reasons for choosing Woodard were pretexts for age and sex discrimination. The Secretary argues that although Breiding was highly qualified for the position, there were legitimate, non-discriminatory reasons why Woodard was selected to fill the position.

The following is a list of the witnesses who testified, with a brief indication of the subject matter of their testimony. All of the witnesses are current employees of NTC. Where appropriate, further reference to their testimony is made in the Proposed Findings of Fact, below.

1. Harold Miller (head of software support branch)—testified regarding Breiding's work while under Miller's supervision.

2. Richard Jarvis (branch head for code [2] 401)—testified to Breiding's work and his qualifications.

3. Paul Little (manager)—discussed his role in the selection of Woodard.

4. Paul Byrley (head of code 251)—discussed Breiding's work on code 251 and how that work related to the critical rating elements for the position at issue; discussed Breiding's sustained superior performance awards.

5. Jill Ashby (engineer)—testified regarding programming work done on code 251

and the need for programming knowledge in her position.

6. Marvin Thorpe, Jr. (engineer)—testified to Breiding's work on code 401.

7. Barry Griffin (engineer)—discussed his role as a member of the rating panel.

8. Chuck Morris (engineer)—discussed his role as a member of the rating panel.

9. William Parrish, Jr. (head, Systems & Technical Branch)—testified regarding his role as the selecting official and the selection process which led to Woodard's selection.

10. Pamela Woodard (engineer)—discussed her educational background.

11. R. James Breiding (claimant)—testified regarding his education, experience, qualifications and his interview with Parrish.

## V. PROPOSED FINDINGS OF FACT

### A. Prima Facie Case

The parties have stipulated that Breiding has proved a prima facie case of age discrimination. Breiding, who was fifty-four years old when the promotion decision was made, belongs to the protected group consisting of employees between the ages of 40 and 64. He was qualified for the promotion, but despite his qualifications, he was denied the promotion. Woodard, thirty-seven and outside of the protected group at the time of the promotion, was promoted.

■ "A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not to be based on consideration of impermissible factors." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2950–51, 57 L.Ed.2d 957 (1978). The *McDonnell Douglas* presumptions are predicated upon a plaintiff's membership in an historically disfavored group. *Livingston v. Roadway Express, Inc.,* 802 F.2d 1250, 1252 (10th Cir. 1986). These presumptions are not necessarily justified when the plaintiff is a member of an historically favored group. *Id.* As a male, Breiding is a member of an historically favored group. In such cases, courts have

---

2. At NTC, a "code" is used to designate a division or department within the Center.

adjusted the *McDonnell Douglas* prima facie case standard because a male plaintiff in a sex discrimination case (or a white plaintiff in a racial discrimination case) would never be able to meet the first prong of the standard.

To justify the *McDonnell Douglas* presumptions, a favored group plaintiff must show "background circumstances which support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Id.* Only upon a showing of these background circumstances and the second, third, and fourth prongs of the *McDonnell Douglas* standard, may a favored group plaintiff take advantage of the *McDonnell Douglas* presumptions and inferences to establish a prima facie case of discrimination.

■ Breiding has not shown any background circumstances which support the suspicion that the Secretary discriminates against the majority. Breiding also has not shown any direct evidence of sex discrimination. Breiding has not established a prima facie case of sex discrimination.

## B. Reasons for Non–Promotion

■ The Secretary articulated several non-discriminatory reasons for the selection of Woodard over Breiding and the other candidates. According to Parrish, Woodard was the best candidate because she had the most programming experience, she was working on a masters degree in computer science, maintaining a 4.0 grade point average, while working full-time at NTC, she was the most energetic and enthusiastic, and she expressed a desire to keep her knowledge current. By articulating these reasons, the Secretary has met his burden. Breiding must now prove that these reasons were pretexts for discrimination or otherwise prove unlawful discrimination.

3. Breiding received a Masters degree in mathematics from Xavier University in 1959. He received a Bachelor of Science degree in physics and mathematics in 1956. At the time of the hiring decision, Woodard was still working toward a Masters in computer science at the University of Central Florida. She received a Bachelor of Arts degree in mathematics in 1971.

## C. Pretext

■ Breiding presented no direct evidence of discrimination. While it may be that Parrish has never hired, promoted, transferred, or otherwise employed anyone over the age of forty, this evidence is insufficient in the absence of information regarding the ages and qualifications of everyone Parrish considered and rejected for the numerous positions he has filled over the years.

The evidence established that Woodard and Breiding were both highly qualified for the position. The three members of the rating panel individually gave Breiding 24, 22, and 23 points, for an average score of 23. Woodard received individual scores of 23, 20, and 22, for an average score of 22. Barry Griffin, who scored Breiding at 24 and Woodard at 23, testified that a one point difference was not significant. Of the remaining highly qualified candidates, one received an average score of 24 and two received average scores of 22.

Breiding's only evidence of pretext was his own conclusion that he was more qualified for the position than Woodard. He based his conclusion upon his education and experience compared with Woodard's education and experience. The evidence indicates that Breiding and Woodard did have differences in education[3] and experience, but these differences do not establish that Woodard was unqualified or that Breiding was more qualified. Breiding does have an impressive record of achievement and education in his field and there is no question that he was highly qualified for the position, but six other candidates, including Woodard, were equally qualified.

Parrish made the decision to promote Woodard following the interviews he conducted in which each candidate was asked the same five questions.[4] The decision was based in part upon subjective criteria such as

4. The five questions were, to the best of Parrish's recollection: (1) What are your career goals? (2) Why do you think you are the most qualified candidate for this promotion? (3) How do you feel about working on several projects at once? (4) What would you like to be doing five years from now? (5) Is there anything else you would like to tell me about your qualifications for this position?

motivation and potential for future performance. Decisions based entirely on subjective criteria are closely scrutinized because "subjective determinations may offer a convenient pretext for giving force and effect to [discrimination].... " *Thornton v. Coffey,* 618 F.2d 686, 691 (10th Cir.1980). *See also Schlei & Grossman, Employment Discrimination Law,* Chapter 6 (2d ed. 1983 and supplements). But the mere presence of subjective criteria does not demand a finding of pretext, especially when objective criteria are also used in the selection process.

Ordinarily, the business judgment exercised in choosing between two qualified (but not identical) candidates is for the employer. The common law does not require the decision to be rational nor does it guarantee success for those having greater merit.

However, when a candidate from one of the groups protected under Title VII or the ADEA is rejected, evaluating the fairness of the decision includes examination of the rationality of the choice. Thus, the court is required to make a judgment as to job requirements and qualifications which would ordinarily be the sole province of the employer. Our economic system presumes that employers will make those decisions efficiently [5] in their own self-interest. Deference is thus due to an employer's business judgment. That deference, however, cannot be permitted to hide discrimination.

The Supreme Court in *Burdine* highlighted these principles:

"The broad, overriding interest, shared by the employer, employee, and consumer, is efficient and trustworthy workmanship assured through fair and ... neutral employment and personnel decisions." ... Title VII, however, does not demand that an employer give preferential treatment to minorities or women. *The statute was not intended to "diminish traditional management prerogatives."* ... It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired ...

[T]he employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination. 450 U.S. at 259 [101 S.Ct. at 1096–97] [citations omitted and emphasis added].

In this case, a group of highly qualified candidates was selected from a pool of applicants based upon scoring of objective elements. Parrish interviewed these candidates, employing some subjective criteria, and reviewed the application documents, looking at such objective criteria as education and experience. The selection of Woodard was the result of a fair and neutral employment decision. Seven equally qualified candidates were considered and one was chosen for the position. There is simply nothing about the selection process that even suggests that discrimination played a part in the decision. Breiding was fairly considered and treated.

Breiding has failed to prove that the legitimate, non-discriminatory reasons articulated by the Secretary for the promotion decision were pretextual. He has failed to prove that he was a victim of unlawful discrimination because of his age.[6]

## VI. CONCLUSION AND RECOMMENDATION

Breiding established a prima facie case of age discrimination, but he did not establish a prima facie case of sex discrimination. The Secretary articulated legitimate, non-discriminatory reasons for his promotion decision. Breiding failed to prove by a preponderance of the evidence that the articulated reasons were pretexts for discrimination or to otherwise prove unlawful discrimination. Accordingly, the undersigned respectfully recom-

---

5. To the extent managerial decisions do not promote efficient production, profits and the enterprise will suffer commensurately.

6. This analysis and conclusion would also hold true as to Breiding's sex discrimination claim, had he satisfied the requirements for a prima facie case of sex discrimination.

mends that judgment be entered for the Secretary.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days of the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully submitted this 12th day of January, 1993.