Christopher T. **BELLAIRS**, Plaintiff,

v.

**COORS BREWING COMPANY,**
Defendant.

Civ. A. No. 94–B–1405.

United States District Court,
D. Colorado.

Nov. 8, 1995.

John Mosby, Denver, CO, Elisa J. Moran, Denver, CO, for Plaintiff.

K. Preston Oade, Jr., Ed Aro, Holme Roberts & Owen, L.L.C., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

In this employment action, defendant, Coors Brewing Company (CBC), moves for summary judgment on the claims of plaintiff, Christopher T. Bellairs (Bellairs) for breach of contract, reverse sex and race discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981, and outrageous conduct. Also pending is plaintiff's motion to strike portions of defendant's summary judgment brief and his motion to file second amended complaint. The motions are adequately briefed and oral argument will not materially aid their resolution. After consideration of the motions and briefs, I conclude that summary judgment should be granted in favor of CBC against Bellairs on all of his claims. I will deny as moot plaintiff's motion to strike. I will also deny his motion to file second amended complaint.

### I.

Plaintiff Bellairs, a 19 year CBC employee, was terminated on April 9, 1993 for sexual harassment of female employee, Kris Kosirog (Kosirog). Bellairs and Kosirog worked in CBC's can manufacturing warehouse. In March, 1993, Kosirog complained to Pat Phillips (Phillips), acting warehouse team leader, that Bellairs was harassing her. Although Kosirog never used the term "sexual harassment," she told Phillips that she "need[ed] him to leave [her] alone." (Pltf.Exh. 4 p. 107). A meeting was held with Kosirog, Bellairs, Phillips, and Gene Cole, the warehouse team leader. At the meeting, which lasted over 2 hours, Bellairs disrupted the meeting several times by coughing and saying "bullshit" under his breath. (Def.Att. 5 p. 1). Bellairs disputes being disruptive in the meeting.

After the meeting, Kosirog met with Rich Jakubiak (Jakubiak) in Employee Relations. She informed him that within a month after beginning work in the warehouse she could tell there was tension. (Def.Exh. 6 p. 1). According to Kosirog, Bellairs asked Kosirog if she got the job fairly. When she replied that she did, Bellairs responded, "No you didn't. You're a woman and you don't belong here." *Id.* Kosirog also reported that she was told that Bellairs said she was "fucking everybody in the [w]arehouse." *Id.* at 2. Another warehouse employee told [Kosirog] that "Bellairs called her 'sperm-breath' or 'cum-breath' or something like that behind her back." *Id.*

Jakubiak then interviewed several employees identified by Kosirog and Bellairs and determined that there was corroboration of Kosirog's harassment claim. (Def.Att. 5). For example, co-worker Rich Krupicka stated that after hearing Kosirog on the communications radio in the warehouse, Bellairs said, "get a clue, "____ breath." Krupicka could not recall the exact word but that it definitely was a derogatory comment. He further stated that Bellairs was always making snide remarks about Kosirog. Warehouse worker Dale Reinoehl informed Jakubiak that Bellairs commented that "Kris was sleeping with everyone." (Def.Att. 8). Reinoehl also stated that he later heard two other employees talking about Bellairs' comments. *Id.* Another warehouse worker, Rick Pickett, informed Jakubiak that Bellairs was upset about how Kosirog was selected for the warehouse job. He also said that "from day one, he has been prodding her and calling her a stupid bitch behind her back." (Def.Att. 9). Pickett also informed Jakubiak that on two or three occasions Bellairs said

Kosirog "doesn't belong in the warehouse because she is a woman." *Id.* Also, Pickett heard Bellairs say that Kosirog must have gotten the job because she is sleeping with Norm Engle." *Id.*

Phillips terminated Bellairs on April 9, 1993 for violations of company policies D–1: Discrimination & Sexual Harassment and Gross Misconduct and W–3: Work Rules & Corrective Discipline. Phillips' decision was also based on Jakubiak's investigation of Bellairs' past disciplinary record. When terminated, Bellairs was on a final written warning for sleeping on the job (Def.Aff. 5). Phillips noted that Bellairs did not make the derogatory statements directly to Kosirog. However, Phillips concluded that Bellairs' remarks to other employees in the warehouse created a hostile environment for Kosirog. (Def.Att. 5). Bellairs has consistently denied making the statements attributed to him by other CBC employees.

Pursuant to CBC's employment action appeal process, Bellairs submitted his termination to CBC's Appeal Board. *See* Def.Att. 2. The Board made the following findings:

> After careful deliberation of the facts presented, the Board voted to uphold the termination. The Board reviewed the meaning of gross misconduct and what necessitated sexual harassment in this case. The members acknowledged that this was a complex case and believe that there was strong evidence to substantiate that Mr. Bellairs said that women don't belong in the Warehouse, made the breath statement and said that she got her job through questionable acts. The Board felt that the evidence was not as strong supporting the statements that Kris Kosirog was having sexual relationships with everyone in the warehouse, or with Norm Engle, her previous supervisor. The Appeal Board decided that Chris Bellairs did create a hostile work environment in the Warehouse and voted to uphold the termination.

Def.Att. 5 p. 3.

The Board unanimously upheld plaintiff's discharge. Bellairs then filed a charge with the Equal Employment Opportunity Commission (EEOC) which resulted in a finding of no probable cause. (Pltf.Reply Brf. to Motion to Strike Exhibits Exh. 4). Bellairs then filed this action on June 14, 1994.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. U.S.,* 622 F.2d 516, 519 (10th Cir.1980); Fed.R.Civ.P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence present in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, summary

judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

### III.

 CBC moves for summary judgment on Bellairs' claim for breach of contract/wrongful discharge/promissory estoppel arguing that the CBC Appeal Board's rejection of Bellairs' appeal precludes him, as a matter of law, from relitigating in this court his breach of contract claim. (Def.Summ.J.Brf. p. 2). This argument misses the mark. Rather, in this case I must decide if there is a genuine issue of material fact about whether CBC breached its contract with Bellairs to follow the disciplinary and termination policies and procedures when it terminated him for sexual harassment. In deciding the motion for summary judgment on the breach of contract claim, I focus on whether there is a sufficient showing of disputed material fact through pleadings, depositions, answers to interrogatories, admissions, or affidavits that the terms of the employment contract were breached. *See Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo.1987).

In *Keenan,* 731 P.2d 708 and *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1348 (Colo. 1988), employees with no express employment contract sought to enforce termination procedures contained in employer personnel handbooks. The Court adopted two theories, implied contract and promissory estoppel, by which a terminated employee may be entitled to enforce termination procedures contained in an employee manual. It is now settled law in Colorado that employer personnel policies or practices can form the basis of an enforceable contract between the employer and employee and give rise to an estoppel against the employer. *See e.g. Keenan* and *Churchey.*

CBC and Bellairs agree that CBC's employment policies are contractually enforceable. (First Amended Complaint ¶¶ 25–28;

Answer ¶¶ 25–27). The issue is whether a reasonable trier of fact could conclude CBC failed to follow its disciplinary and termination procedures.

CBC personnel policy "W–3: Work Rules & Corrective Discipline" outlines progressive disciplinary steps to be followed by CBC for various offenses. It also provides, in pertinent part:

> Some violations are so serious that the first offense warrants termination....

> Violations subject to immediate termination include, but are not limited to ...

> Gross misconduct/negligence— ... jokes or derogatory remarks or discrimination on the basis of ... sex; sexually harassing or abusing another individual ...

> The appeal procedure may be used by employees who feel they have received unjust disciplinary action.

(Def.Att. 10 pp. 1, 3, 4, 5.)

CBC's personnel policy "C–10: CONFLICT–RESOLUTION PROCESS" provides, in pertinent part:

> Appeals involving charges of unjust treatment in which written disciplinary action has been taken, are reviewed by an Appeal Board. The employee may appeal the justification for the disciplinary action or the severity of the action.

> . . .. . .

> The Appeal Board will review the actions of management to determine if just cause existed for the disciplinary action and whether all applicable company policies were followed. Decisions of the C[onflict]–R[esolution] P[rocess] are final and binding on the Company, as well as the employee....

(Def.Att. 1.)

The structure and function of the CBC Appeal Board process is described in "Coors Peer Review Complaint Program" (Def.Att. 4) and in CBC Att. 2 titled "Appeal Board Process." It is a systematic process by which any CBC employee may have a disciplinary action reviewed by a six-member board made up of three peers, two members of management, and a representative from Employee Relations. The members of the

board are randomly selected from a list of names generated by the employee records system. The employee has the right to strike names from the list. (Def.Att. 2; Def. Att. 4 p. 3).

Bellairs does not dispute that he was aware of the provisions of CBC's employment policies and procedures or that he availed himself of the appeal board process to its fullest extent. Indeed, I find no genuine dispute whatsoever that CBC followed their policies and procedures to the letter. Thus, as a matter of law, no reasonable juror could find that CBC breached its employment contract with Bellairs based on the evidence presented in the motion and response. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Accordingly, I will grant CBC's motion for summary judgment on Bellairs' breach of contract claim.

■ Promissory estoppel is available as a remedy only in the absence of an otherwise enforceable contract. *Scott Co. of California v. MK–Ferguson Co.*, 832 P.2d 1000 (Colo. App.1991). If, as in this case, there is an enforceable contract, the alternative remedy of promissory estoppel is not applicable. *See Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900 (Colo.1982).

Bellairs does not seek to review the decision of the appeal board. (Pltf.Resp.Brf. p. 18). Bellairs does, however, complain that the CBC appeal process is a "deprivation of due process...." *Id.* I do not address this allegation because there is no due process claim before me. In any event, the records shows indisputably that the process afforded Bellairs was full and fair.

Further, I did not rely on any Jefferson County District Court pleadings, instructions, or rulings in my analysis or application of *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). Consequently, I will deny as moot, plaintiff's "motion to strike portions of defendant's brief in support of its motion for summary judgment."

IV.

CBC also seeks summary judgment on Bellairs' claims that CBC violated Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 by terminating his employment on the basis of his sex and race. I will grant CBC's motion for summary judgment.

Bellairs, a caucasian male, alleges that "[Kosirog] had previously accused a minority employee of sexual misconduct. Plaintiff asserts that no action was taken against the minority. Plaintiff, however, was terminated after being accused of similar conduct by the same female." (First Amended Complaint, ¶ 9). Bellairs did not name the minority employee in his complaint. However, in Bellairs' response to CBC's motion for summary judgment, he names Steve DeHerrera (DeHerrera), Kris Kosirog, and Odis Redwine (Redwine) as being similarly situated but treated differently than he; i.e., accused of sexual misconduct but not terminated.

■ Title VII prohibits discrimination by an employer "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1) (1982). Title VII prohibits racial discrimination against whites as well as non-whites. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976). 42 U.S.C. § 1981 also prohibits contractual discrimination in private employment against white persons as well as persons of color. *Id.* at 286–87, 96 S.Ct. at 2581–82. In all instances, the allegations of discrimination must be supported by facts indicating purposeful discrimination on the basis of color. *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389–91, 102 S.Ct. 3141, 3149–50, 73 L.Ed.2d 835 (1982); *Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir.), *cert. den.*, —— U.S. ——, 115 S.Ct. 80, 130 L.Ed.2d 33 (1994).

In disparate treatment claims, a plaintiff may rely on the burden shifting format set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *EEOC v. Flasher Co.*,

*Inc.,* 986 F.2d 1312 (10th Cir.1992); *Notari v. Denver Water Dept.,* 971 F.2d 585, 589 (10th Cir.1992). However, the *McDonnell Douglas* format is modified in an action for reverse, disparate treatment discrimination.

Generally, to establish a *prima facie* showing of disparate treatment for violation of a work rule, plaintiff must show that: 1) he belongs to a protected group; 2) he was discharged for violating a work rule; and 3) similarly situated non-members of the protected group were treated differently. *See McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1260 (10th Cir.1988). The burden of production then shifts to the employer to show a facially legitimate, nondiscriminatory reason for its employment decision. *Ofelia Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). If the employer meets this burden, plaintiff must rebut the employer's showing by demonstrating that the proffered justification is a pretext—i.e. "unworthy of belief." *Id.; Ingels v. Thiokol Corp,* 42 F.3d 616, 622 (10th Cir.1994). If the plaintiff is able to show a *prima facie* case and presents evidence the employer's proffered reason is unworthy of belief, the plaintiff can withstand a summary judgment motion. *Ofelia Randle,* 69 F.3d at 451.

In this case, there is no dispute that Bellairs was discharged for violating a work rule. Whether CBC is entitled to summary judgment turns on analysis of the first and third prongs of the requisite *prima facie* showing. Bellairs fails on both counts.

As to the first prong, under the modified *McDonnell Douglas* analysis, a reverse discrimination claimant may substitute the requirement that he be a member of a protected group with evidence that "the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dept.,* 971 F.2d 585, 589 (10th Cir.1992); *see Livingston v. Roadway Exp., Inc.,* 802 F.2d 1250 (10th Cir. 1986). As to the third prong, a reverse discrimination plaintiff may present "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability that but for the plaintiff's status, the challenged employment decision would

have favored the plaintiff." *Notari,* 971 F.2d at 590.

There is no genuine dispute that in 1992, CBC discharged for gross misconduct an hispanic male and a black male. (Pltf. Exh. 19 pp. 5–6). Moreover, it is not genuinely disputed that numerous caucasian male CBC employees committed gross misconduct but were not discharged. *Id.* at 5. Bellairs has failed to produce evidence that "the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dep't.,* 971 F.2d 585, 589 (10th Cir.1992); *see Livingston v. Roadway Exp., Inc.,* 802 F.2d 1250 (10th Cir. 1986). Bellairs has not met his burden upon the first prong of his *prima facie* case.

As to the third prong of the requisite *prima facie* case, Bellairs presents no direct evidence of discrimination based on his status as a caucasian male. Rather, he offers as indirect evidence two examples of alleged disparate treatment of non-caucasian males and one such example of a female. Based on the alleged disparate treatment, Bellairs concludes that, but for the fact he is a caucasian male, he would not have been terminated.

Bellairs contends that Redwine, a black male, DeHerrera, an hispanic male, and Kosirog, a female, were similarly situated employees who were treated differently, and, thus, he has met the third requirement of the *prima facie* case. I conclude no genuine dispute of fact has been shown that these employees were similarly situated.

In 1988, Kosirog approached her supervisor with a complaint about a fellow employee, Odis Redwine:

> Kristina approached me on 5–14–88 and informed me that Odis Redwine had been harrasing (sic) her. I contacted Odis' supervisor (Karl Gonzales) and then met with Kristina, Karl [and] Ed Patterson to discuss what had actually happened. I informed Kristina of what her rights were and what options were available to her. She stated at this time that all she wanted was for Odis to stay away from her.

(Pltf.Exh. 7).

Kosirog followed this up with a written complaint dated 5–16–88:

For over a week now, Odis Redwine has approached me and tried to get me to go out. I told him no. On Saturday, ... he kept coming down on the floor and bothering me. I told him I was busy. When I went out on the transfer table ... he followed me out and told me 'now I got you right where I want you' and started coming down the stairs. I was scared and grabbed for a bar. He told me that I didn't need that and I told him not to lay a hand on me. He left and when I came back up the stair he had a chain hooked on the door so I couldn't get back in. He finally let me back in. I told him to leave me alone and to let me do my job even if he didn't want to do his job.

I feel that the remedy for this would be to have him stay away from me and not to bother me.

(Pltf.Exh. 7)

Redwine's supervisor, Karl Gonzales, met with Redwine on 5/15/88:

Conducted an investigative meeting with Odis to allow him to answer the allegations of harassment by a female employee in the warehouse. Explained policy S–8; and the gross misconduct sec. of W–3 for which he could be disciplined for if this did not stop. At Odis' suggestion we came to an understanding that we could resolve the matter at this level by satisfying the female employee's wishes that he would stay completely away from her. I also asked Odis to stay close to his UPL and stop meandering off into other areas. This will help eliminate potential problems.

*Id.*

On 5–17–88 Redwine submitted the following written, signed statement:

I agree to stay way (sic) from Kristine Kosirog at all times in the future. *Id.* Thereafter, on a personnel form titled "complaint resolution" Kosirog responded:

I have seen Odis Redwine's agreement and feel that it would be satisfactory for me. *Id.*

Bellairs provides no other evidence about Redwine's CBC discipline history or that Redwine persisted in the unwanted behavior. In stark contrast with Redwine's situation, Bellairs has an extensive history of discipline problems. For example, during his 19 years with CBC, Bellairs received 10 separate "first written warnings" for various items such as attendance, poor work performance, and traffic violations. Bellairs also had three other complaints from co-workers about harassment. Indeed, on August 2, 1987, Bellairs received a "first written warning" for "harassment and gross misconduct." At the time of his firing, Bellairs was under a "final written warning" for "sleeping on the job."

Unlike Bellairs, Redwine did not dispute Kosirog's complaint. There is no showing that Redwine's behavior was other than an isolated incident. Kosirog proposed a solution to the problem and Redwine agreed to it. There is no evidence that there were further problems with Redwine or that Redwine had a disciplinary history comparable to Bellairs. Under these circumstances, no reasonable trier of fact could conclude that Redwine and Bellairs were similarly situated. Thus, CBC's failure to terminate Redwine cannot form the basis of Bellairs' *prima facie* case.

▉ In March, 1993, Steve DeHerrera, a CBC hispanic male employee, filed a complaint with Employee Relations about Kosirog's communications with him:

On March 23, 1993, 6:30 a.m., I was getting ready for my training on computer and radio dispatch job. I was sitting in front of the computer with Rick Ritter. Kris Kosirog was sitting next to the senior specialist desk when Rick Kelim walked into the dispatch office complaining about the condition graveyard had left the warehouse in. At that time Kris Kosirog replied "yea, because of this asshole"! At the same time she was makeing (sic) this statement she got the folded newspaper from the desk and threw it at me, striking me on the leg and falling to the floor.

On another ocasion (sic) I reported to work at 10:30 p.m., I was in the dispatch office makeing (sic) a copy of the coil running schedual (sic) when Kris Kosirog came storming into the office yelling at me and warning me to quit fucking with her and to stay off her back. I kept asking her "what

did I do." She gave me no reply she just turned around and walked out of the office. Within a half hour she came to me and apologized to me saying she thought it was me who changed the work schedual (sic) she had made out. Someone else had changed it and she had blamed me for it. She later approached me in coil staging area and told me that she was going to take Chris Bellairs out and if I didn't watch out she was going to include me as well. I took this as a personal threat on my job from Kris Kosirog.

Since Kris Kosirog came into this department she has talked openly in very sexually explicit terms. She always tells dirty jokes and has always used filthy language. I have always found that disgusting, being that she is the only female on our crew.

I have also seen her place her arms on several employees here. On one ocasion (sic) I saw her place her arms on Lewis Brooms, senior specialist on graveyard and rest her head on his chest telling him how tired she was.

I feel that something must be done about her physical touching fellow employees as well as her talking about herself in very sexually explicit manners, this has been an ongoing problem with her.

(Pltf.Exh. 3)

Pat Phillips, acting supervisor, decided that DeHerrera and Kosirog, who were in training together, should be separated until Employee Relations could make a determination concerning DeHerrera's formal complaint. (Pltf.Exh. 8 p. 2). On April 19, 1993, Phillips told Kosirog about DeHerrera's complaint. At that time, Kosirog told Phillips that there had been an incident where DeHerrera had reached into her shirt and grabbed her breast and then grabbed her hand and placed it on his groin area. Kosirog said she had not reported it because she didn't want DeHerrera to lose his job. Kosirog was advised to file a complaint with Employee Relations but there is no evidence that she did.

Neither party has submitted evidence of the outcome of these incidents but it appears neither DeHerrera nor Kosirog was terminated. Thus, Bellairs argues that he was treated disparately.

Like Bellairs, DeHerrera denied Kosirog's accusation against him. However, unlike Bellairs, there was no third party corroboration of the accusation. Moreover, Bellairs has not shown that DeHerrera's disciplinary history is similar to his own. Also, under CBC Policy W–3, supervisors are required to consider "an employee's entire work history" before issuing discipline. (Def.Att. 10 p. 1). Under these circumstances, I conclude that no reasonable trier of fact could find that DeHerrera and Bellairs were similarly situated. Thus, CBC's failure to terminate DeHerrera cannot form the basis of Bellairs' *prima facie* case.

██ The harassment complaint DeHerrera filed against Kosirog is outlined above. In addition, Kosirog had a checkered disciplinary history with CBC. Before her assignment to the warehouse, Kosirog had been terminated from two positions within CBC—once for drug and alcohol use and later for accidents. She was on a final warning when DeHerrera filed his complaint against her. However, unlike Bellairs, her disciplinary history did not include previous allegations or incidents of harassment. Moreover, there was no third party corroboration of the harassment complaint against her. Also, unlike Kosirog, there is evidence that Bellairs dealt with the harassment complaint by being disruptive and using vulgar language during a meeting about Kosirog's complaint against him. Further, there is a qualitative difference in the nature of the investigation against Bellairs. Kosirog complained about Bellairs' treatment of her. However, the details of Bellairs' comments about Kosirog were not provided by Kosirog. Rather, they were supplied by three caucasian, male employee witnesses—Dale Reinoehl, Rick Krupicka, and Rick Pickett. Again, under these circumstances, I conclude no reasonable trier of fact could find that Kosirog and Bellairs were similarly situated. As with Redwine and DeHerrera, CBC's failure to terminate Kosirog cannot form the basis of Bellairs' *prima facie* case. Accordingly, I will grant summary judgment on

Bellairs' claims for gender and race discrimination.

## V.

■ CBC also moves for summary judgment on Bellairs' claim that the CBC's actions constitute outrageous conduct. Bellairs alleges that CBC "knowingly and intentional[ly] manufactured false allegations of sexual harassment." (Resp.Brief, p. 20). Bellairs describes CBC's course of conduct toward him as "so extreme in degree as to go beyond the bounds of decency and is regarded as atrocious and intolerable in a civilized community." (Complaint ¶ 33).

■ The tort of intentional infliction of emotional distress—outrageous conduct was adopted by the Colorado Supreme Court in *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970). The Colorado Supreme Court adopted the Restatement (Second) of Torts § 46 (1965) in defining this claim. Liability may be found only "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Rugg,* 476 P.2d at 756 (quoting Restatement 2d of Torts § 46, comment d). In order to be liable, CBC's conduct must be more than "unreasonable, unkind or unfair; it must truly offend community notions of acceptable conduct." *Grandchamp v. United Air Lines, Inc.,* 854 F.2d 381, 383 (10th Cir.1988), *cert. denied,* 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 838 (1989). The trial court makes the threshold determination whether reasonable persons could differ on the conduct being outrageous. *Id.*

■ Discharge from employment, without more, is not outrageous. *Id.* at 384. At the same time, an employer is not shielded from employee claims of outrageous conduct. "Thus, the *manner* of discharge, and the employer's conduct is critical to a finding of outrageous conduct." *Id.* at 385. A mere allegation by an employee that he was dismissed or demoted wrongfully, summarily, or in violation of the employers policies and procedures fails to state a claim for outra-

geous conduct. *See Therrien v. United Air Lines, Inc.,* 670 F.Supp. 1517, 1524 (D.Colo. 1987), and cases cited therein.

Bellairs relies on his characterizations of CBC's conduct as "bogus charges of sexual harassment and saddling him with these heinous allegations on his records which stigmatize him." (Pltf.Resp.Brf. p. 21). Several CBC employees corroborate CBC's determination that Bellairs created the hostile environment in which Kosirog worked. (Def.Att. 7) (Krupicka memorandum); (Def.Att. 8) (Reinoehl memorandum); (Def.Att. 9) (Pickett memorandum). Moreover, when fired, Bellairs had an extensive disciplinary record (Def.Att. 11), and he was on a "final written warning" for an unrelated incident. (Def.Att. 5). I conclude, as a matter of law, that the manner of Bellairs' discharge was not outrageous. *Compare Wing v. JMB Property Management Corp.,* 714 P.2d 916, 918 (Colo.App.1985) (plaintiff was assaulted, thrown to the ground, sexually harassed, ridiculed, threatened, humiliated and ultimately fired). Accordingly, I will grant summary judgment in favor of CBC on Bellairs' outrageous conduct claim.

## VI.

■ Also pending is plaintiff's Federal Rule of Civil Procedure 15(a) motion to file an amended complaint. I will deny Bellairs' motion.

Bellairs filed his original complaint in this action on June 14, 1994. On June 27, 1994, Bellairs filed a first amended complaint. Pursuant to the scheduling order entered in this case, deadline for submission of amended pleadings expired on November 1, 1994. Notwithstanding this deadline, on May 12, 1995, Bellairs filed a motion for leave to file a second amended complaint seeking to add as defendants, Patrick Phillips and Richard Jakubiak. In this motion, Bellairs seeks, for the first time to introduce new claims of interference with contractual relations and civil conspiracy against Phillips and Jakubiak.

■ Motions to amend a complaint under Rule 15 should be freely granted when justice requires. *Las Vegas Ice and Cold*

**1460**

Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir.1990). The decision whether to grant a motion to amend is left to the sound discretion of the district court. *Id.* However, untimeliness alone is a sufficient reason to deny leave to amend. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993); *Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452, 1462 (10th Cir.1991). Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice,* 893 F.2d at 1185.

Bellairs has known since 1993 the roles played by Phillips and Jakubiak in CBC's decision to terminate him. Thus, Bellairs' second motion to amend is inexcusably untimely.

Accordingly, it is ORDERED that:

1. summary judgment is GRANTED in favor of defendant on all claims in plaintiff's complaint;

2. plaintiff's motion to strike portions of defendant's brief in support of its motion for summary judgment is DENIED as moot;

3. plaintiff's motion to file second amended complaint is DENIED;

4. this action is DISMISSED;

5. defendant is awarded costs.