Dorothy A. TAKEN and Tawana A. White, Plaintiffs,

v.

OKLAHOMA CORPORATION COMMISSION, a political subdivision of the State of Oklahoma, Defendant.

No. CIV–95–1407–A.

United States District Court, W.D. Oklahoma.

July 31, 1996.

Frederick W. Southern, Jr., Oklahoma City, OK, for plaintiffs.

Jana J. Harris, Elliott & Morris, Oklahoma City, OK, Rachel R. Lawrence–Mor, Oklahoma Corporation Commission, Office of General Counsel, Oklahoma City, OK, Kimberly Dixon, Oklahoma City, OK, for defendant.

## *ORDER*

ALLEY, District Judge.

Before the Court is the Motion for Summary Judgment of defendant Oklahoma Corporation Commission, filed June 7, 1996. Plaintiffs Dorothy A. Taken and Tawana A. White have responded in opposition to defendant's motion. Plaintiffs have also moved to strike from defendant's summary judgment brief all references to a decision of the Oklahoma Merit Protection Commission. (Plaintiffs' Motion to Strike the MPC Determination, filed July 2, 1996.) Defendant opposes plaintiffs' motion.

Defendant seeks judgment as a matter of law pursuant to Fed.R.Civ.P. 56 on claims that plaintiffs were not selected for promotion to a vacant position in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.*, and Oklahoma public policy. Defendant contends that plaintiffs, who are ·white, cannot prove their allegations that a black female was chosen for the position because of her race and because of "third party sexual harassment". Defendant's motion also raises a legal issue: whether plaintiffs' "third party sexual harassment" claim, based on the existence of a personal relationship between the

selected woman and a male official who selected her, is actionable under Title VII.

Plaintiffs' motion seeks exclusion from the summary judgment record of all references to an adverse decision of the Merit Protection Commission (MPC) that was issued during administrative proceedings in which plaintiffs first challenged the selection decision. Plaintiffs argue that an unreviewed administrative decision cannot be given preclusive effect in a subsequent Title VII action and that the adverse MPC decision is not admissible evidence in this case. Plaintiffs contend that defendant's attempt to rely on the MPC decision as a basis for summary judgment is improper and that a copy of the MPC decision submitted by defendant in support of its motion should be stricken from the record.

For reasons discussed below, the Court grants summary judgment to defendant, and denies plaintiff's motion as·moot.

## *RELEVANT UNDISPUTED FACTS*

In December 1993, a position at the Corporation Commission classified as Administrative Assistant II became available for promotion or hiring. Approved candidates for the position, that is, persons certified by the Office of Personnel Management (OPM) as meeting minimum qualifications for the job classification, included plaintiffs, who are white females, and Tansy Preston, a black female. In January 1994, a selection committee interviewed the approved candidates and then chose Ms. Preston for the position. The selection· committee consisted of Bill Burnett, who is a black male, and Carl Solomon and David Dyke, who are white males. Each committee member has testified that he selected Ms. Preston for the job because she was the most qualified applicant. The department of the Corporation Commission in which the coveted position falls, the Consumer Services Division, consists of the following employees: five white males, two black males, three white females, and five black females.[1]

---

1. Plaintiff responded to defendant's statement of this fact by arguing that the make-up of the Consumer Services Division is irrelevant to the summary judgment issues. Plaintiff did not, however, challenge the accuracy of the statement. For reasons discussed below, the Court finds that the fact is relevant, although marginally so. Therefore, it stands in the record as a material undisputed fact.

In opposition to defendant's motion, plaintiffs raise numerous factual issues. Plaintiffs make allegations, supported as required by Rule 56, that Ms. Preston was not in fact qualified for an Administrative Assistant II position because she lacked the requisite amount of supervisory experience, that Mr. Burnett had pre-selected Ms. Preston for the position, that Mr. Burnett assisted Ms. Preston in obtaining OPM certification by falsely representing to OPM the amount of her supervisory experience, and that he pressured other committee members to vote for Ms. Preston. All of these alleged facts are irrelevant to the Court's summary judgment ruling.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings, affidavits, and other evidence on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, a court must view all facts and inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, only genuine disputes over facts that might affect the outcome of the case under the governing substantive law preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510.

A party's failure to make a sufficient showing on an essential element of her case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. A movant need only point out that there is an absence

of evidence to support an essential element of the non-movant's case. *Id.* at 325, 106 S.Ct. at 2553–54. Then, the non-movant must go beyond the pleadings and set forth specific facts demonstrating that there is a triable issue. *Id.* at 324, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; Fed.R.Civ.P. 56(e).

### PLAINTIFFS' CLAIM OF RACE DISCRIMINATION

Defendant contends summary judgment is appropriate on plaintiffs' race discrimination claim under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1980). Defendant argues that plaintiffs lack sufficient evidence either to establish a prima facie case of race discrimination or to overcome defendant's legitimate non-discriminatory reason for promoting Ms. Preston, namely, that she was most qualified. Plaintiffs dispute these contentions. They also assert that direct evidence exists of discrimination by one decision maker, Mr. Burnett, that renders the burden-shifting analysis of *McDonnell Douglas* and *Burdine* unnecessary, and brings this case under the mixed-motive analysis of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

Although the parties do not identify it as such, plaintiffs' race discrimination claim is one of reverse discrimination, or alleged discrimination against a member of the majority race.[2] The Court's research reveals that the court of appeals has adopted a modified version of the *McDonnell Douglas* analysis for reverse discrimination cases. Such a modification is appropriate because " 'a prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not

---

2. Even though a Title VII plaintiff does not characterize his claim as a reverse discrimination claim, a district court may properly treat it as such whenever the plaintiff "is a member of an

historically favored group". *Rhoads v. Wal–Mart Stores*, No. 95–1313, 1996 WL 194854, *1, 83 F.3d 433 (10th Cir. April 23, 1996).

based on consideration of impermissible factors.'" *Notari v. Denver Water Dep't,* 971 F.2d 585, 589 (10th Cir.1992) (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978)). However, "'the presumptions in Title VII analysis that are valid when a plaintiff belongs to a disfavored group are not necessarily justified when the plaintiff is a member of an historically favored group.'" *Notari,* 971 F.2d at 589 (quoting *Livingston v. Roadway Express, Inc.,* 802 F.2d 1250, 1252 (10th Cir.1986)). Thus, "a Title VII disparate treatment plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari,* 971 F.2d at 589. Such background circumstances may be shown by statistical evidence, for example, that the plaintiff is the only white employee in an otherwise minority department. *Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1535 (10th Cir.1995).

■ However, a reverse discrimination plaintiff who cannot show the background circumstances necessary to trigger the *McDonnell Douglas* presumption has alternative means of proof. "[A reverse discrimination] plaintiff may establish a prima facie case of disparate treatment under Title VII 'by direct evidence of discrimination or by indirect evidence whose cumulative probative force, apart from the presumption's operation, would suffice under the controlling standard to support as a reasonable probability the inference that but for plaintiff's race he would have been promoted.'" *Notari,* 971 F.2d at 590 (quoting *Holmes v. Bevilacqua,* 794 F.2d 142, 146 (4th Cir.1986) (en banc)). In explaining these prima facie case alternatives, the court of appeals has stated:

> [I]t is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged decision. Instead, the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.

*Notari,* 971 F.2d at 590. If a reverse discrimination plaintiff meets his burden of establishing a prima facie case through one of these alternative methods of proof, then the remainder of the *McDonnell Douglas* paradigm applies. *Id.* at 592.

Plaintiffs in this case assert that their race discrimination claims are not reverse discrimination claims at all. (Pls.' Resp. to Def.'s Mot. for Summ. J. at 9.) Plaintiffs thus make no effort to identify background circumstances that would support an inference that defendant is an unusual employer who discriminates against the majority. To the contrary, plaintiffs argue that defendant is *not* the "unusual employer". (Pls.' Resp. to Def.'s Mot. for Summ. J. at 9.)

■ Nevertheless, the Court has searched the facts presented by plaintiffs in opposition to summary judgment to determine whether background circumstances exist that might satisfy the first element of the modified *McDonnell Douglas* prima facie case. Defendant's Consumer Services Division, where the promotion occurred, has eight white employees and seven black employees. Thus, a majority of the department is white. The record is silent concerning the racial makeup of management, other than the race of the director of the department, Mr. Burnett. Mr. Burnett, the official who allegedly discriminated on the basis of race, is a member of a minority race.

This single fact is insufficient to establish the necessary background circumstances. A similar fact was present in *Notari,* where the person allegedly making the challenged decision had a status different from the plaintiff's. Namely, in *Notari,* a male employee claiming gender discrimination was denied a promotion by a female superior, who gave the job to another female. Yet, the court of appeals held in *Notari* that the district court had correctly found that the plaintiff failed to allege existence of the requisite background circumstances. *Notari,* 971 F.2d at 589.

Because plaintiffs do not present evidence of background circumstances that would establish a prima facie case of reverse discrimination, the Court considers the alternatives identified in *Notari*. Plaintiffs contend that direct evidence of discriminatory intent exists. One could also interpret their argument to be that the cumulative force of indirect evidence in the record creates a reasonable inference that, but for plaintiffs' race, they would have been promoted instead of Ms. Preston.[3] Neither contention has merit.

The court of appeals has explained the difference between direct evidence of discriminatory intent and circumstantial evidence that discrimination may have played a part in an employment decision:

> [E]vidence of "an existing policy which itself constitutes discrimination" is direct evidence of discrimination. In contrast, ... statements which are merely expressions of personal opinion or bias do not constitute direct evidence of discrimination. Because such statements require the trier of fact to infer that discrimination was a motivating cause of an employment decision, they are at most circumstantial evidence of discriminatory intent.

*E.E.O.C. v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir.1996) (citations omitted). Thus, the following are not direct evidence of discriminatory intent: a manager's remark that "I hate having fucking women in the office"; a director's "feelings about women being better suited to some jobs than others"; and a manager's statement that a plaintiff could not be promoted because "he was too damned old". *See id.* (quoting *Heim v. State of Utah,* 8 F.3d 1541, 1546–47 (10th Cir.1993); *Ramsey v. City of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990); *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537, 1547 (10th Cir. 1987)).

The Court has searched plaintiffs' summary judgment brief and supporting materials, as well as transcripts of plaintiffs' depositions submitted by defendant, for any evidence of racially discriminatory intent. Plaintiffs present no evidence that would constitute direct evidence of race discrimination in the challenged promotion decision under the court of appeals' formulation.[4]

Plaintiffs offer two types of circumstantial evidence that allegedly raise an inference of race discrimination: (1) a remark by Mr. Burnett; and (2) evidence suggesting that Mr. Burnett pre-selected Ms. Preston for promotion and orchestrated her selection to fill the vacant position, despite her lack of a necessary qualification. The latter evidence, even if believed, does not suggest that Mr. Burnett's actions were based on race as opposed to some other reason, such as the personal relationship discussed *infra*. Indeed, the deposition excerpts included in the summary judgment record show that witnesses who believe pre-selection occurred, and who have formed an opinion about Mr. Burnett's reasons based on personal knowledge of surrounding circumstances, unanimously expressed a belief that Mr. Burnett was motivated by his personal feelings for Ms. Preston, not by race. Only Mr. Burnett's alleged remark, which makes reference to black females, suggests a distinction based on race. The Court thus turns to consideration of the alleged remark.

■ The law of this circuit concerning the use of allegedly discriminatory statements to show discrimination by an employer is as follows:

> Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in [employment] decisions. [A plaintiff] must demonstrate a

---

**3.** The Court will consider this argument despite its illogical premise. There was only one position, so plaintiffs could not *both* have been selected to fill it.

**4.** Because plaintiffs have presented no direct evidence of race discrimination, the Court need not address their argument (based on the alleged existence of such evidence) that the burden-shifting analysis of *McDonnell Douglas* is inapplicable and defendant instead has the burden of

proving that it would have made the same decision in spite of the job candidates' race. Thus, the Court need not reconcile decisions of the court of appeals stating that direct evidence of discrimination renders the *McDonnell Douglas* analysis unnecessary, with decisions in reverse discrimination cases stating that direct evidence merely establishes a prima facie case of discrimination and the *McDonnell Douglas* analysis still applies.

nexus exists between these allegedly discriminatory statements and [the employer's] decision. . . .

*Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir.1994) (citations omitted). To establish the requisite nexus, the comments must be directed at the plaintiff or the position, must be made by a decision maker, and must be made in a context related to the decision at issue. *See id.* at 531–32; *see also Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1457 (10th Cir.1994).

■ The only alleged statement that contains any reference to race was made by Mr. Burnett, a member of the selection committee. Plaintiffs allege Mr. Burnett made a comment to the effect that "someone has to take care of these black girls". (Pls.' Resp. to Def.'s Mot. for Summ. J. at 7.) The Court has examined the record for evidentiary support that such a statement was made. The only witnesses who profess any personal knowledge of Mr. Burnett's making the statement are Ann Furnace and, possibly, Sherry Soliz.[5] Neither witness provided any information about the context of the statement or who Mr. Burnett might have been referring to. In fact, in excerpts from the deposition of Ms. Furnace (the only person who unequivocally reported hearing the statement), she testified that she could not recall the conversation in which the alleged statement occurred. (Pls.' Resp. to Def.'s Mot. for Summ. J., Dep. of Ann J. Furnace at 42.)

The Court thus finds that plaintiffs have failed to establish a nexus between the alleged discriminatory statement and the promotion decision at issue. The alleged statement was not directed at the plaintiffs or, so far as the record shows, at Ms. Preston or the position for which she was selected. There is nothing in the record about the context of the remark from which to infer that Mr. Burnett personally intended to "take care of black girls", that he intended to do so in the work setting, or that he intended to do so by promoting them to higher po-

sitions within his department. Because plaintiffs have not demonstrated a connection between Mr. Burnett's remark and the challenged promotion decision, the alleged remark is insufficient to show that Mr. Burnett's reason for selecting Ms. Preston was based on her race.

In summary, plaintiffs have not alleged the existence of background circumstances that would support an inference that defendant is one of those unusual employers who discriminates against the majority. Plaintiffs have not presented direct evidence of racially discriminatory intent. Nor have plaintiffs come forward with indirect evidence of sufficient probative force to create a reasonable inference that race played any part in the promotion decision. Therefore, the Court finds that plaintiffs have failed to establish a prima facie case of reverse race discrimination, and defendant is entitled to summary judgment as a matter of law on that claim.

### *PLAINTIFFS' CLAIM OF SEX DISCRIMINATION*

■ Plaintiffs also challenge the promotion decision based on a claim of "third party sexual harassment" arising from the alleged existence of a close personal relationship between Mr. Burnett and Ms. Preston. The critical issue in regard to this claim, however, is not sexual harassment but intentional gender discrimination. Plaintiffs do not allege that conduct by Mr. Burnett and Ms. Preston of a sexual nature in the workplace created a sexually hostile work environment. Plaintiffs' theory is more akin to a quid pro quo situation, that is, Ms. Preston received the promotion, and other alleged preferential treatment, because she accepted Mr. Burnett's affection.[6] Plaintiffs allege that Mr. Burnett and Ms. Preston had a consensual, intimate relationship that resulted in Mr. Burnett's selection of Ms. Preston for promotion to the vacant Administrative Assistant II position in his department.

The Court rejects this claim as a matter of law, even though the Court also questions

---

**5.** Ms. Soliz's deposition testimony was unclear as to whether she heard Mr. Burnett make the statement or whether Ann Furnace told her about his making it.

**6.** There is no allegation, however, that Ms. Preston did not welcome Mr. Burnett's attention.

whether plaintiffs have come forward with sufficient evidence to show that Mr. Burnett and Ms. Preston had an intimate, sexual relationship. The Court finds that the type of discrimination alleged by plaintiffs is simply not actionable under Title VII. Title VII prohibits discrimination on the basis of gender-based distinctions, not on the basis of sexual or personal affiliations.

Plaintiffs direct the Court's attention to case law extending Title VII, at least implicitly, to permit recovery by an employee based upon a supervisor's preferential treatment of another subordinate with whom the supervisor had a voluntary sexual relationship. *See King v. Palmer*, 598 F.Supp. 65 (D.D.C.1984), *rev'd on other grounds*, 778 F.2d 878 (D.C.Cir.1985). *King* represents a minority view that has not been widely accepted. *See Ellert v. University of Texas*, 52 F.3d 543, 546 (5th Cir.1995) (citing cases); *Thomson v. Olson*, 866 F.Supp. 1267, 1272 (D.N.D.1994) (citing cases), *aff'd*, 56 F.3d 69 (8th Cir.1995); *see also Autry v. North Carolina Dep't of Human Resources*, 820 F.2d 1384, 1387 (4th Cir.1987) (black employee's race discrimination claim could not be based solely on friendship between white interviewer and white employee who was promoted).

In the leading case on the subject, *DeCintio v. Westchester County Medical Ctr.*, 807 F.2d 304 (2d Cir.1986), the Second Circuit held that a claim of gender discrimination brought by male employees who were denied promotion because a male superior gave preferential treatment to his female paramour was not cognizable under Title VII. In so holding, the court declined to define the statutory phrase "discrimination on the basis of sex" to encompass "disparate treatment premised not on one's gender, but rather on a romantic relationship between an employer and a person preferentially hired. The meaning of 'sex' ... thereby would be expanded to include 'sexual liaisons' and 'sexual attractions.' Such an overbroad definition is wholly unwarranted." *Id.* at 306.

This Court agrees with the rationale and holding of *DeCintio*. Assume plaintiffs' allegations in this case are true. The promotion decision, to the extent it was made by Mr. Burnett, was not based on sex, race or any other impermissible factor; it was based on his attraction to or feelings for Ms. Preston. Plaintiffs faced the same predicament as any other candidate for the position except Ms. Preston; no one but Ms. Preston could be considered for the position because only she had a personal relationship with Mr. Burnett. Mr. Burnett's "conduct, although unfair, simply did not violate Title VII." *Id.* at 308.

Plaintiffs cannot prove a claim of sexually discriminatory non-promotion based on the existence of a personal relationship between Mr. Burnett and Ms. Preston. Therefore, defendant is entitled to judgment on this claim as a matter of law.

Indeed, by their vigorous assertion that close personal feelings motivated the promotion decision, plaintiffs are hoist with their own petard. The circumstantial evidence offered to show that Ms. Preston's promotion was based on something other than job qualifications demonstrates that Mr. Burnett acted for a non-discriminatory reason, his personal affection for Ms. Preston. Unless Title VII is designed to provide equal opportunity for employees to compete for bosses' affections, basing a promotion decision on affection is not impermissible. By presenting evidence of discrimination based on relationship, plaintiffs have squelched any inference that the challenged promotion decision was tainted by gender-based or race-based discrimination. Plaintiffs' own effort to prove their case has defeated it.

### CONCLUSION

For the above reasons, defendant's Motion for Summary Judgment is GRANTED. Defendant Oklahoma Corporation Commission is entitled to judgment as a matter of law on plaintiff's Title VII and state law tort claims against it.[7] Judgment will be entered ac-

---

7. The summary judgment briefs are silent concerning a pendent claim alleged in the complaint that plaintiffs' non-promotion violated public policy of the State of Oklahoma. (Complaint at 3, ¶ 22.) The Court need not decide whether non-

promotion, as opposed to discharge, is actionable under *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla. 1989), and *Tate v. Browning–Ferris*, 833 P.2d 1218 (Okla.1992), and what the effect of *List v. Anchor Paint Mfg. Co.*, 910 P.2d 1011 (Okla.

cordingly. Plaintiffs' Motion to Strike the MPC Determination from the record is DENIED as moot.

It is so ordered.

1996), may be. Because the underlying premise of any public policy tort claim is the existence of unlawful discrimination, and because no viable discrimination claim exists, any pendent claim plaintiffs may have fails as a matter of law.