### Robert E. JOHNSON, Plaintiff,

v.

### THE BOARD OF JOHNSON COUNTY COMMISSIONERS, Defendant.

### No. CIV.A.97–2493–GTV.

United States District Court,
D. Kansas.

Jan. 13, 1999.

Christopher R. Williams, Scarritt Arcade, Kansas City, MO, for Robert E Johnson, plaintiff.

LeeAnne Hays Gillaspie, Frank S. Reeb, Johnson County Legal Department, Olathe, KS, for Sheriff of Johnson County and Johnson County Board of County Com'rs, defendants.

### MEMORANDUM AND ORDER

VANBEBBER, Chief Judge.

In this action, plaintiff claims that the Johnson County Sheriff's Department denied him a promotion and transfers, and prevented him from participating in the department's tuition reimbursement program in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[1] The case is before the court on defendant's motion for summary judgment (Doc. 30). For the reasons set forth below, defendant's motion is granted.

---

1. As a deputy for the Johnson County Sheriff's Department, Johnson was employed by Johnson County. Under K.S.A. 19–105, the named party in a suit against Johnson County is the Board of County Commissioners for the county of Johnson. Accordingly, the court will refer to Johnson County Board of County Commissioners as "defendant."

## I. FACTUAL BACKGROUND

### A. Order to Show Cause

Defendant filed the instant motion for summary judgment on September 1, 1998. Plaintiff filed a timely response on September 23, 1998. After reviewing plaintiff's response, the court concluded that it did not comply with D. Kan. Rule 56.1. The court, therefore, ordered plaintiff to file a supplemental brief in response to defendant's motion. Plaintiff ignored the court's order.

The court acknowledges that plaintiff's response controverts some of defendant's facts and manages to set out additional facts in support of plaintiff's claims. However, plaintiff's response is woefully deficient in that it contains virtually no argument and fails to controvert the majority of defendant's statement of facts. Furthermore, the response fails to cite any evidence other than plaintiff's own affidavit testimony, which consists almost entirely of plaintiff's opinion and speculation. While it is unclear whether a complete presentation of the facts by plaintiff would have avoided summary judgment, the record before the court demands that defendant's motion for summary judgment be granted.

### B. Facts

Plaintiff Robert E. Johnson is a black male who began working for the Johnson County Sheriff's Department ("the department") as Deputy Sheriff/Correctional Specialist (Class C) in April 1985. By 1988, Johnson bore the title Senior Deputy Sheriff/Correctional Specialist (Class A). On July 7, 1988, the department issued a Notice of Promotion Examination for promotion to Sergeant. Four days later, Johnson applied for the promotion to Sergeant.

In order to be considered for the position of Sergeant, an interested deputy must, among other things, score at least an 80% on the promotion examination and have a satisfactory performance evaluation within three months of the date of the written examination. Prior to taking the exam, Lt. Smith, the exam administrator and grader, allegedly told Johnson that he would not be promoted to Sergeant even if he scored a 100% on the promotion examination. On July 28, 1988, Johnson took the promotion examination and scored a non-passing score of 75%. According to the department, Johnson was not promoted due to his low test score and a performance evaluation showing that Johnson's performance was "unacceptable" in five areas.

His attempt to move vertically within the department thwarted, Johnson, on three occasions, sought a transfer to the Warrants Division of the Sheriff's Department and, on one occasion, sought a transfer to the department's Court Security Unit. All four transfer requests were denied. Within the Johnson County Sheriff's Department, a deputy may submit reassignment requests to the Personnel and Training Unit at anytime regardless of whether there is an opening in the deputy's unit of choice. However, reassignments are based on the needs of the department and not on the preferences of the deputies. Johnson first requested transfer to the Warrants Division on July 25, 1989. On July 26, 1989, the department denied Johnson's request due to problems with his past job performance. Specifically, Johnson's performance appraisal issued July 19, 1988 indicated that he received "unacceptable" ratings in five of the twenty-two categories. Johnson's October 13, 1988 performance appraisal noted "unacceptable" ratings in six categories.

Johnson next attempted to transfer to the Court Security Unit in August 1993. The department did not consider Johnson's transfer request because the Court Security Unit did not exist in August 1993. The unit was eventually created, but no opening existed in the unit until January 1996. The department did not consider Johnson for the 1996 opening because his transfer request expired at the end of 1994.

In February 1994, Johnson again requested reassignment to the Warrants Division. No opening existed in the Warrants Division until March 1995. At that time, Lt. Richard Simpson and Major William James interviewed eighteen deputies, including Johnson, for the position. Deputy Cynthia Zak, a female, was selected for reassignment. According to Major James' affidavit, the department chose Deputy Zak because she was detail-oriented, a self-starter, and highly professional. Furthermore, Deputy Zak's Performance Efficiency Ratings were well above the acceptable level.

Shortly after Deputy Zak was reassigned, a second position opened in the Warrants Division. Rather than conducting a second set of interviews, the department decided to select the most qualified deputy from the remaining seventeen candidates. The department ultimately selected Deputy David Post. The department considered Deputy Post to be the best applicant for the position due to his organizational skills, ability to adapt to new situations, and overall maturity. In addition, his Performance Efficiency Ratings were well above the acceptable level.

In his final transfer request, submitted on April 26, 1996, Johnson sought reassignment to the Warrants Division for a third time. When a position in the Warrants Division opened in December 1996, Captain Vincent Werkowitch, Sergeant Robert Pinkelman, and Deputy Richard Ray interviewed Johnson and twenty-six other deputies for the position. Based on the results of the interviews, the department selected Deputy Kevin Tilley. According to Capt. Werkowitch's affidavit, Deputy Tilley was confident and capable of handling the duties of a Warrants Unit Deputy. Furthermore, Deputy Tilley was the only candidate who possessed an instrument rating on his pilot's license. The department concluded that Deputy Tilley was the best qualified deputy for the position as he could assist the department's primary pilot by sharing the flying duties on long extradition flights. Furthermore, Capt. Werkowitch and Sgt. Pinkelman stated in their affidavits that Johnson exhibited a bad attitude about his employment with the Sheriff's Department, which resulted in poor answers to various questions posed by the review board.

Throughout his tenure with the department, Johnson completed various courses related to the field of criminal justice. Pursuant to department policy, employees may request reimbursement for approved college courses. In order to receive a reimbursement, employees desiring to enroll in college courses must first complete the department's College Reimbursement Request Form and obtain approval from the department's Training Unit Commander.

In January 1987, Johnson sought approval for enrollment and reimbursement for nine hours of course work toward an Associates Degree in Criminal Justice. Lt. Larry Smith approved Johnson's request. Upon completing the nine hours of course work, the department reimbursed Johnson. In 1989, Johnson sought approval and reimbursement for $2,500—one-half the cost of an entire bachelor's degree program at Mid–America Nazarene College.[2] The requested amount was $1,000 greater that the department's 1989 budget for tuition reimbursement. Smith met with Johnson to discuss his reimbursement request. According to Johnson's affidavit, Smith stated that the department was not going pay "one red cent" for Johnson's college tuition. Smith also explained to Johnson that the department could not approve his request because it called for a lump sum payment rather than a course-by-course payment. Smith then informed Johnson that the department would reconsider its decision if Johnson submitted re-

---

2. Johnson County Sheriff's Department Directive B–86–04 establishes the policy and procedure for the college reimbursement program. Under this directive, employees may seek reimbursement for 100% of the cost for allowable community college course work and for 50% of allowable four-year college course work.

quests for each separate course. Johnson was unable to submit his request course-by-course because Mid–America Nazarene College would not separate the program into individual classes or credits until each semester was completed. Despite his displeasure with Smith's denial, Johnson did not file a grievance. Instead, Johnson applied for and received a student loan and enrolled at Mid–America Nazarene College, eventually completing twenty-seven credit hours of course work toward his bachelor's degree.

In August 1993, Johnson sought approval to attend a three-credit-hour course at Johnson County Community College. Capt. James approved this request, and Johnson was reimbursed when he completed the course.

In February 1995, Johnson sought tuition reimbursement for the course work he completed toward his bachelor's degree at Mid–America Nazarene College. As part of his effort to recoup his tuition, Johnson sent a memo to Captain William James stating, in pertinent part, the following:

> Major Smith ... informed me that he could not approve the assistance [with tuition] because it cost to [sic] much and it would deplete the college fund. Major Smith stated that if the program could be separated into payments per credit hours that the department could pay for part of it.

In May 1995, Capt. James denied the request because Johnson had not received approval prior to enrolling in the various courses. Johnson then turned again to Smith, now a Major in the department, to review Capt. James' denial. Smith denied the request for the same reasons cited by Capt. James. In September 1995, following unsuccessful appeals to the Undersheriff and Sheriff, Johnson filed a grievance with the Sheriff's Civil Service Board regarding the denial of his tuition reimbursement request. The Civil Service Board affirmed the denial of Johnson's request on the ground that the appeal was untimely. On December 21, 1995, Johnson filed a charge with the Equal Employment Opportunity Commission. The particulars of Johnson's charge are as follows:

> On a continuing basis this employer has denied me equal employment opportunity with regard to:

> Preventing, restricting, and limiting my participation in its tuition reimbursement program because of my race and/or sex. I have observed more favorable treatment being given to newer employees who are of a different ethnic origin and sex.

> Preventing, restricting, and limiting my opportunities to achieve transfers to various assignments because of my race and/or sex. I have observed non-Black employees being given more favorable treatment in this regard. Many of these employees have been hired subsequent to my hire.

On January 31, 1997, Johnson resigned his employment with the department. Johnson filed this suit in federal court on September 30, 1997.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The party moving for summary judgment bears the initial burden of demon-

strating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984).

## III. DISCUSSION

### A. Allegations Properly Before the Court

The court not does have jurisdiction to consider some of Johnson's claims because he failed to exhaust his administrative remedies. Furthermore, the court will not consider the merits of some of Johnson's remaining claims because they are time-barred by the provisions of Title VII.

#### 1. Failure to file an administrative charge

█ A plaintiff must exhaust his administrative remedies before bringing suit under Title VII. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409 (10th Cir.1997). Spe-

cifically, a plaintiff is required to file an administrative charge with the EEOC before filing in federal court. The purpose of this administrative filing requirement is to give an employer notice of the charges and an opportunity to comply voluntarily with the statutes. *See Aguirre v. McCaw RCC Communications, Inc.*, 923 F.Supp. 1431, 1433 (D.Kan.1996).

█ Johnson alleges in his first amended complaint that he was, among other things, denied a promotion in violation of Title VII. Defendant contends that summary judgment must be granted on Johnson's failure to promote claim due to his failure to exhaust his administrative remedies. Specifically, defendant argues that this court lacks jurisdiction to hear Johnson's failure to promote claim because such a claim was never filed with the EEOC. Plaintiff did not respond to defendant's argument. The court agrees with defendant and concludes that plaintiff failed to exhaust his administrative remedies with respect to his failure to promote claim. Accordingly, defendant's motion for summary judgment is granted as to that claim.[3]

#### 2. Time-barred allegations

Under Title VII, a party must file his or her administrative charge with the EEOC within 300 days after the alleged discrimination. *See Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993) (citing 42 U.S.C. § 2000e–5(e)).[4] Any alleged discrimination occurring outside of this time frame is time-barred and will not be considered by the court unless the acts complained of constitute part of a continuing pattern or practice of discrimination. *See id.* at 1415. This means that

---

**3.** A suit brought under Title VII may include the allegations of discrimination listed in the administrative charge *and* other allegations reasonably related to the listed allegations, including acts occurring during the pendency of the administrative charge. *See Aramburu,* 112 F.3d at 1409. Although this issue was not raised by plaintiff, the court has reviewed the record and concludes that Johnson's fail-

ure to promote claim is not reasonably related to the allegations of discrimination listed in his EEOC charge.

**4.** The 300–day limitation applies in those states, including Kansas, that have statutorily prohibited sexual discrimination. Otherwise, the limit is 180 days. *See Nannie and the Newborns,* 3 F.3d at 1414 n. 4.

if the court does not find that the alleged discrimination amounts to a continuing practice, any incident of discrimination occurring before February 24, 1995—300 hundred days before the filing of plaintiff's administrative charge with the EEOC—will not be considered by the court.

 In determining whether incidents of alleged discrimination constitute a continuing course of discrimination, the court generally considers whether the violations constitute the same type of discrimination, the frequency of the alleged discrimination, and the permanence of the potentially time-barred discriminatory acts. *See id.* In this case, it is unnecessary to complete this analysis. Plaintiff fails to provide any argument or evidence to support a finding of a continuing violation. Furthermore, because the court concludes that none of the alleged acts—occurring before or after February 24, 1995—amount to race or gender discrimination, it is not possible to find a continuing pattern or practice of discrimination. As a result of the court's finding that no continuing violation existed, any allegation of discrimination occurring before February 24, 1995 is time-barred and will not be addressed or considered by the court. Specifically, the court will not consider Johnson's claims based on the department's failure to promote him in 1988, to transfer him to the Warrants Division in 1989, and to transfer him to the Court Security Unit in 1993.[5]

### B. Race–Based Failure to Transfer Claims

 Johnson claims that he suffered disparate treatment due to his race in violation of Title VII. To prevail on this claim, Johnson must show that, compared with other similarly situated employees, he was treated differently because of his race. Johnson has the ultimate burden of proving intentional discrimination. He may carry this burden by presenting either direct or indirect evidence of the depart-

ments' discriminatory intent. *See, e.g., E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir.1992).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court provided a framework which enables a plaintiff such as Johnson to establish intentional discrimination despite having no direct evidence. Under *McDonnell Douglas*, Johnson must first establish a prima facie case of race discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Once the prima facie case is established, a presumption of unlawful discrimination is created. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendant may rebut this presumption by producing evidence that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." *See id.* Once defendant meets its burden of production, the initial presumption of intentional discrimination "simply drops from the case." *See Hicks*, 509 U.S. at 507, 113 S.Ct. 2742 (quoting *Burdine*, 450 U.S. at 255, 101 S.Ct. 1089). At this point, Johnson may attempt to show that defendant's proffered reason was not the true reason, but was merely a pretext for discrimination. *See id.* at 507–508, 101 S.Ct. 1089.

### 1. Failure to transfer to Warrants Division in 1995

 For purposes of this motion, defendant concedes that Johnson has established a prima facie case for his claim alleging a failure to transfer to the Warrants Division in March 1995. Defendant, however, argues that the department had a legitimate, nondiscriminatory reason for not transferring Johnson. Defendant contends that the department transferred Deputies Cynthia Zak and David Post

---

**5.** Johnson submitted a transfer request seeking reassignment to the Court Security Unit in August 1993. This request expired at the end of 1994. Because any discriminatory conduct relating to this alleged failure to transfer must have occurred before 1995, this claim is time-barred.

rather than Johnson due to their superior qualifications.[6] According to defendant, Deputy Zak's Performance Efficiency Ratings were far superior to Johnson's. Furthermore, the department concluded from the interview process that Deputy Zak was detail oriented, a self-starter, and highly professional. The department reached similar conclusions about Deputy Post. According to defendant, Deputy Post was superior to Johnson due to his organizational skills, ability to adapt to new situations, overall maturity, and excellent Performance Efficiency Ratings.

Now that defendant has articulated a legitimate nondiscriminatory reason for its employment decision, Johnson, in order to avoid summary judgment, must show that defendant's proffered reason was not the true reason, but was merely a pretext for discrimination. Johnson fails to provide the court with any evidence or argument that defendant's articulated reason is actually a pretext for unlawful discrimination.

### 2. Failure to transfer to Warrants Division in 1996

Defendant concedes for purposes of this motion that Johnson can establish a prima facie case for his claim alleging a failure to transfer to the Warrants Division in 1996. Defendant contends that summary judgment remains appropriate because the department failed to transfer Johnson because he was not the best qualified applicant for the position. According to defendant, Deputy Kevin Tilley[7] was transferred to the Warrants Division because he was, among other things, the only candidate who possessed an instrument rating on his pilot's license and, thereby, the most qualified candidate. Furthermore, members of the review board choosing the candidate for transfer stated that Johnson had a noticeably bad attitude and harbored negative feelings for the Sher-

iff's Department. Again, Johnson fails to provide the court with any evidence or argument that the articulated legitimate, nondiscriminatory reason was actually a pretext for unlawful discrimination.

### C. Gender–Based Failure to Transfer Claims

■ Johnson also claims that the department impermissibly refused to transfer him because of his gender. Because Johnson is male, this claim alleges reverse discrimination. When confronted with a reverse discrimination claim, courts in the Tenth Circuit apply a modified version of the *McDonnell Douglas* analysis. *See Notari v. Denver Water Dep't,* 971 F.2d 585, 589 (10th Cir.1992). Under *McDonnell Douglas,* it is presumed that unless otherwise explained, discrimination is more likely than not the reason for the adverse employment decision. This presumption, however, "is valid for a reverse discrimination claimant only when the requisite background circumstances exist." *Id.* Therefore, Johnson must, "in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id.* A plaintiff may establish the existence of such background circumstances through statistical evidence showing, for instance, that the plaintiff is the only male employee in his department. *See Reynolds v. School Dist. No. 1,* 69 F.3d 1523, 1535 (10th Cir. 1995).

■ Johnson makes no attempt to identify background circumstances that would support an inference that the Johnson County Sheriff's Department discriminates against the majority. The court concludes that the *McDonnell Douglas* analysis is inapplicable to this case. This conclusion,

---

**6.** Johnson fails to identify the race of these two individuals. This failure alone precludes Johnson from establishing his prima facie case. The court, however, will continue its analysis under the assumption that these individuals are white.

**7.** Johnson, again, fails to inform the court of the selected individual's race.

however, does not equate to a grant of summary judgment. Rather, Johnson may avoid summary judgment by presenting "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff." *Notari,* 971 F.2d at 590. Johnson has failed to produce any direct or indirect evidence that he was denied transfer due to his gender.

### D. Tuition Reimbursement Claims

Johnson also asserts claims of racial and gender discrimination in the terms and conditions of his employment with defendant. Specifically, Johnson claims that he was denied reimbursement for tuition expenses due to his sex and race.

For the reasons stated above, Johnson's gender-based claim fails. Johnson has again failed to establish the requisite background circumstances that would support an inference of reverse discrimination. *See Notari,* 971 F.2d at 589. Furthermore, Johnson has failed to submit any "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status [as a male] the challenged employment decision would have favored the plaintiff." *id.* at 590. The court now turns to Johnson's race-based tuition reimbursement claim.

 "To establish a prima facie case of discrimination in the terms and conditions of employment, such as tuition benefits, the plaintiff must establish the following: (a) plaintiff is a member of a protected group; (b) plaintiff is entitled to the desired terms and conditions of employment; (c) the employer denied plaintiff the desired terms and conditions of employment; and (d) nonprotected employees were granted the desired terms and conditions of employment." *Moore v. Norfolk and Western Ry. Co.,* 731 F.Supp. 1015, 1019 (D.Kan.1990). Johnson appears to have satisfied his prima facie case: (a) he is black; (b) as a deputy he was entitled to the benefit of tuition reimbursement; (c) the department denied Johnson's request for tuition reimbursement; and (d) white employees' requests for tuition reimbursement were granted.

 Defendant responds by arguing that it had a legitimate, nondiscriminatory reason for its actions. According to defendant, it denied Johnson's tuition reimbursement request because Johnson failed to get approval prior to registering for and attending the college courses. The department policy specifically states that a prerequisite for tuition reimbursement is approval from the Training Unit Commander for enrollment and reimbursement. It is undisputed that Johnson failed to get the necessary approval.

Now that defendant has articulated a nondiscriminatory, legitimate reason for denying Johnson's request, Johnson may attempt to show that defendant's reason is a mere pretext for discrimination. Again, Johnson fails to address this issue. The court has reviewed the summary judgment papers and concludes that defendant's articulated reason was not a pretext for discrimination. The record contains an admission by Johnson that he did not receive approval prior to attending the courses at Mid–America Nazarene College and that he understood that approval was denied because his reimbursement request sought a lump sum payment rather than payment on a course-by-course basis. Furthermore, the record shows that the department granted Johnson's reimbursement requests when he followed department procedures. Accordingly, summary judgment is appropriate.

### E. Constructive Discharge

 Finally, Johnson claims that he was constructively discharged as a result of defendant's discriminatory conduct. To establish a claim of constructive discharge, Johnson must demonstrate that his "employer's discriminatory conduct produced working conditions that a reasonable person would view as intolerable." *Daemi,*

**1283**

931 F.2d at 1386. "[T]he question on which constructive discharge cases turn is simply whether the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign." *Derr*, 796 F.2d at 344.

Johnson's constructive discharge claim must fail because the court concludes that the department did not engage in any illegal discriminatory conduct. *See id.* Because defendant is entitled to summary judgment on all of plaintiff's discrimination claims, summary judgment also is appropriate on the constructive discharge claim.

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 30) is granted.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**